UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
MARIANO BARBOSA,

                              Plaintiff,                    ***PROPOSED THIRD AMENDED
                                                           COMPLAINT AND JURY
                                                           DEMAND***

         -against-                                              ECF CASE

                                                           Docket No. 16-CV-7340 (LTS) (RLE)

THE CITY OF NEW YORK; SALVATORE CASSANO;
ROBERT G. BYRNES; JAMES LEONARD;
JAMES C. HODGENS; ANDREW DIPADOVA;
PHILIP P. MEAGHER; MICHAEL J. KAVANAGH;
CYRUS ROBERTS VANCE JR.; BRIAN MCDONALD;
~~ERIC H. HANSEN~~; THOMAS G. KANE; MARYANA
CHOUCHEREBA; and JOHN and JANE DOE 1 through 10,
individually and in their official capacities (the names John
and Jane Doe being fictitious, as the true names are presently
unknown),

                              Defendants.
-------------------------------------------------------------------X

         Plaintiff Mariano Barbosa, by his attorney Jaime Santana Jr., Esq., of Santana Law Firm,

PC, for his proposed third amended complaint against the above Defendants alleges as follows:


                              **PRELIMARY STATEMENT**

         1. This is a civil rights action in which Plaintiff seeks relief through 42 U.S.C. §§ 1983 and

1985(3) for the violations of his free exercise and enjoyment of civil rights protected by the Fourth,

Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution, which are the supreme

law of the land under the Supremacy Clause of Article 6 clause 2 of the United States Constitution,

and the laws and Constitution of the State of New York.

         2. The claim arises from a September 20, 2013 incident in which Defendants, acting in

both their official and individual capacities under color of state law, detained and unlawfully

1

imprisoned and coerced Mr. Barbosa into confessing that Mr. Barbosa set fires on eight separate occasions in the common area of the SoHo Grand Hotel Yotel Hotel where Mr. Barbosa worked. On the dates in question, Mr. Barbosa was not violating any law, ordinance, or statute. Mr. Barbosa did not possess any incendiary device or damage any building by starting a fire. Despite Mr. Barbosa's innocence, the Defendants Kane, Meagher, Doe, and Kavanaugh wrongfully accused and coerced Mr. Barbosa into confessing to crimes Mr. Barbosa did not commit. For over three hours, Mr. Barbosa was wrongfully in custody and subjected to custodial interrogation by the Defendants. Mr. Barbosa spent approximately six or seven consecutive days in custody directly following his unlawful arrest and excessive bail. Furthermore, the Defendants continued to maliciously have Mr. Barbosa prosecuted for over two years, requiring Mr. Barbosa to make approximately twenty-three Court appearances before the case against Mr. Barbosa was finally dismissed by prosecutors. The prosecutors, at the time of dismissal, stated their decision was based on the State Supreme Court Trial Judge's determination that the defendants were not only incredible, but that they subjected the Plaintiff to "aggressive" and "accusatory" custodial interrogation.

3. Mr. Barbosa brings this action not only to challenge the unlawful conduct of the individual Defendants and for a declaratory judgment, but also to challenge the reckless disregard of Defendants' supervisors and policymakers such as Defendant FDNY Commissioner Salvatore Cassano; James Leonard; James C. Hodgens; Andrew Dipadova; FDNY Chief Fire Marshal Robert G. Byrnes, John Doe, Jane Doe, and the City of New York for failing to adequately train, supervise, direct, discipline, and control the Defendants and failing to maintain, implement, or establish official policies, guidelines, or procedures on the following: 1) the 4th, 5th, 6th, and 14th Amendment standards of Defendant fire marshals of the Bureau of Fire Investigation on how to

conduct a lawful interrogation in accordance with the *Miranda- Edwards-Minnick* line of cases
under *Miranda v. Arizona*, 384 U.S. 436 (1966); Edwards v. Arizona, 451 U.S 477 (1981); &
Minnick v. Mississippi, 498 U.S. 146 (1990); 2) the 4th, 5th, 6th, and 14th Amendment standards of
Defendant fire marshals of the Bureau of Fire Investigation on how to obtain a voluntary
confession in accordance with the *Miranda-Edwards-Minnick-Montejo* line of cases, citing
Montejo v. Louisiana, 556 U.S. 778 (2009) where the Fifth Amendment's right to counsel attaches
upon invocation (i.e., when an attorney is requested); 3) the 4th Amendment standards of
Defendant fire marshals of the Bureau of Fire Investigation on how to conduct a lawful warrantless
arrest, especially where the NYPD has such a formal written policy under NYPD Patrol Guide
208-01 (Effective Aug. 1, 2013)(Law of Arrest), which shows that the FDNY has no excuse to not
have a formal policy on warrantless arrests; 4) 14th Amendment procedural due process standards
of Defendant fire marshals of the Bureau of Fire Investigation on the prohibited conduct of
intentionally making a false official statement, especially where the NYPD has such a formal
written police policy under NYPD Patrol Guide 203-08 (Effective Aug. 1, 2013)(making false
statements), which shows that the FDNY has no excuse; and 5) the 4th, 5th, 6th, 8th, and 14th
Amendment standards in regards to the NYDA's "exercise of independent discretion" in
determining whether to criminally prosecute Plaintiff, which includes, but is not limited to, a) the
4th, 5th, 6th, and 14th Amendment standards of how the NYDA may conduct a lawful interrogation/a
lawful custodial interrogation in accordance with the *Miranda- Edwards-Minnick* line of cases; b)
the 4th, 5th, 6th, and 14th Amendment standards how the NYDA may conduct a lawful custodial
interrogation obtain a voluntary confession in accordance with the *Miranda- Edwards-Minnick-
Montejo* line of cases; c) the 14th Amendment equal protection standards on how to reduce
behavioral and cognitive confirmation bias in regards to conducting the NYDA's "exercise of

independent discretion" in determining whether to criminally prosecute Plaintiff. Additionally, Mr. Barbosa seeks damages for the City's deliberate indifference to the NYDA's and FDNY's policy, practice and/or custom of inadequate training, supervision, direction, guidance, discipline and control of its marshals who violate the constitutional rights of citizens and engage in misconduct.

4. The NYDA's and FDNY's policies, practices and/or customs, along with the actions of the individual Defendants and inaction of supervisors, violated Plaintiff's constitutional rights secured by the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the Constitution of the United States. Plaintiff seeks monetary damages (compensatory and punitive) against Defendants, a declaratory judgment, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

## JURISDICTION

5. This action arises under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and under 42 U.S.C. §§ 1983 and 1985(3).

6. The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 2201 and 2202.

## VENUE

7. Venue is laid within the Southern District of New York in that Defendants are located within and a substantial part of the events giving rise to the claim occurred within the boundaries of the Southern District. 28 U.S.C. § 1391 (b) and (c).

## PARTIES

8. Plaintiff Mariano Barbosa ("Plaintiff" or "Mr. Barbosa") resided at all times in New York County, in the City and State of New York.

9. The Defendant City of New York (or "the City") is a municipal corporation organized

4

under the laws of the State of New York.

10. At all times relevant hereto, Defendant City, acting through the Fire Department of New York (or "FDNY") and New York County District Attorney's Office (NYDA) through specific offices including, but not limited to, the NYC Bureau of Fire Investigation, was responsible for the policy, practice, training, direction, supervision, implementation, and conduct of all NYDA and FDNY matters and was responsible for the appointment, training, supervision, direction, discipline and retention and conduct of all NYDA and FDNY personnel, including fire marshals and supervisory officers as well as the individually named Defendants herein.

11. In addition, at all times here relevant, Defendant City was responsible for enforcing the rules of the NYDA and FDNY, and for ensuring that the NYDA and FDNY personnel obey the laws of the United States and the State of New York.

12. The Defendant, Salvatore Cassano, was the Commissioner of the New York City Fire Department (FDNY) from January 1, 2010 to June 7, 2014 where the Defendant, Salvatore Cassano resigned before completing his term. The Defendant, Salvatore Cassano, was a policymaker during 2013 of policies, procedures, and guidelines for employees of the New York City Fire Department (FDNY) and was, at all times here relevant, employed by the FDNY and as such was acting in both the individual and official capacities as an agent, servant, and employee of the City of New York. Defendant Cassano is sued in his individual and official capacity.

13. The Defendant, Robert G. Byrnes, was the Chief Fire Marshal during 2013 of the FDNY. The Defendant, Robert G. Byrnes, was a policymaker during 2013 of policies, procedures, and guidelines for employees of the New York City Fire Department (FDNY) and was, at all times here relevant, employed by the FDNY and as such was acting in both the individual and official capacities as an agent, servant and employee of the City of New York. Defendant Byrnes is sued in

his individual and official capacity.

14. The Defendant, James Leonard, was the Chief of Department of the New York City Fire Department (FDNY) during 2013. The Defendant, James Leonard, was a policymaker during 2013 of policies, procedures, and guidelines for employees of the New York City Fire Department (FDNY) and was, at all times here relevant, employed by the FDNY and as such was acting in both the individual and official capacities as an agent, servant and employee of the City of New York. Defendant Leonard is sued in his individual and official capacity.

15. The Defendant, James C. Hodgens, was the Chief of Training of the New York City Fire Department (FDNY) during 2013. The Defendant, James C. Hodgens, was a policymaker during 2013 of policies, procedures, and guidelines for employees of the New York City Fire Department (FDNY) and was, at all times here relevant, employed by the FDNY and as such was acting in both the individual and official capacities as an agent, servant and employee of the City of New York. Defendant Hodgens is sued in his individual and official capacity.

16. The Defendant, Andrew Dipadova, was the Chief of Fire Academy of the New York City Fire Department (FDNY) during 2013. The Defendant, Andrew Dipadova, was a policymaker during 2013 of policies, procedures, and guidelines for employees of the New York City Fire Department (FDNY) and was, at all times here relevant, employed by the FDNY and as such was acting in both the individual and official capacities as an agent, servant and employee of the City of New York. Defendant Dipadova is sued in his individual and official capacity.

17. Defendant Fire Marshal Phillip P. Meagher ("Meagher") was, at all times here relevant, a fire marshal employed by the FDNY and as such was acting in the capacity as an agent, servant and employee of the City of New York. Defendant Meagher was, at the time relevant herein, a Fire Marshal at 251 Lafayette Street, New York, NY 10012. Defendant Meagher is sued in his

individual and official capacity.

18. Defendant Fire Marshal Michael J. Kavanagh ("Kavanagh") was, at all times here relevant, a fire marshal employed by the FDNY and as such was acting in the capacity as an agent, servant and employee of the City of New York. Defendant Kavanagh was, at the time relevant herein, a Fire Marshal at 251 Lafayette Street, New York, NY 10012. Defendant Kavanagh is sued in his individual and official capacities.

19. The Defendant, Thomas G. Kane was, at all times here relevant, a FDNY employee and supervisor and employed by the FDNY and as such was acting in the capacity as an agent, servant and employee of the City of New York. Defendant Kane is sued in his individual and official capacities.

20. The Defendant, Maryana Chouchereba, is the FDNY/Public Certification officer who was, at all times here relevant, employed by the FDNY and as such was acting in the capacity as an agent, servant and employee of the City of New York. Defendant Chouchereba is sued in her individual and official capacities. See 718-999-1102 and Maryana.Chouchereba@fdny.nyc.gov.

21. The Defendant, Cyrus Roberts Vance Jr., is the New York County District Attorney and was, at all times here relevant, employed by the City of New York in the District Attorney's Office and as such was acting in the capacity as an agent, servant and employee of the City of New York. Defendant Cyrus Roberts Vance Jr., is a policymaker and is sued in his individual and official capacity, especially where the conduct, acts, or omissions of the Defendant Vance Jr. may constitute non-governmental acts.

22. Defendant, Brian McDonald, is an assistant district attorney and was, at all times here relevant, employed by the City of New York in the District Attorney's Office and as such was acting in the capacity as an agent, servant and employee of the City of New York. Defendant Brian

McDonald is sued in his individual and official capacity, especially where the conduct, acts, or omissions of the Defendant McDonald may constitute non-governmental acts.

23. At all times relevant Defendants John and Jane Doe 1 through 10 were fire marshals, supervisors, policy makers, and/or officials employed by the NYDA and FDNY. Plaintiff does not know the real names of Defendants John and Jane Doe 1 through 10.

24. At all times relevant herein, Defendants John and Jane Doe 1 through 10 were acting as agents, servants and employees of the City of New York and the FDNY or NYDA. Defendants John and Jane Doe 1 through 10 are sued in their individual and official capacities.

25. At all times here mentioned Defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs, and usages of the City and State of New York.

## FACTUAL CHARGES

26. On September 8, 2013, Defendant Meagher responded to two fires at the Yotel Hotel, which is located at 570 Tenth Avenue, New York, NY 10036. Upon further investigation, Defendant Meagher discovered there had been four additional fires at the Yotel Hotel over the past two years.

27. Mr. Barbosa was an employee at the Yotel Hotel during this time period.

28. Defendant Meagher later discovered that Plaintiff, Mr. Barbosa was the only employee working at the time of each of the fires. As a result of this correlative-based logistical fallacy of *post hoc, ergo propter hoc*, Defendant Meagher instructed Yotel Director of Security Anthony Rodriguez and Yotel Assistant Director of Security Bobby Lee Torres to order Mr. Barbosa to go to the Fire Marshall's Office to review video footage of the hotel.

29. Defendant Meagher's fire investigation of Mr. Barbosa was based primarily on the use

of the correlative-based logistical fallacy of *post hoc, ergo propter hoc*. *Post hoc, ergo propter hoc* is a Latin phrase for "after this, therefore, because of this." The term refers to a correlative-based logical fallacy that because two events occurred in succession, the former event caused the latter event, which is a logistical fallacy. In addressing a *post hoc, ergo propter hoc* argument, it is important to recognize that correlation does not equal causation.

30. Defendant Meagher's fire investigation of Mr. Barbosa was based on a *post hoc, ergo propter hoc* argument where Defendant Meagher's suspicion of Mr. Barbosa was based on the faulty assumption that because there is a correlation between two variables such as (1) Mr. Barbosa allegedly being the only employee working at the time of each of the fires, and (2) a series of hotel fires, that one caused the other, which is a correlative-based logistical fallacy of *post hoc, ergo propter hoc* where Defendant Meagher alleged and accused Mr. Barbosa of causing the series of hotel fires.

31. "A person who commits the false cause fallacy, generally known as *non causa pro causa*, 'mistake[s] what is not the cause of a given effect for its real cause.' *Post hoc ergo proctor hoc*, a special version of the false cause fallacy, is an assertion that, because one event occurred before another, the first was the cause of the second. Although the post hoc argument seems to be an easy fallacy to avoid, it appears with some regularity in legal argument." See also Kevin W. Saunders, Informal Fallacies in Legal Argumentation, 44 S.C. L. Rev. 343 (1992-1993). http://digitalcommons.law.msu.edu/cgi/viewcontent.cgi?article=1444&context=facpubs

32. On September 20, 2013, Mr. Barbosa arrived at the Fire Marshal's Office, located at 251 Lafayette Street, New York, NY 10012, at approximately 4:00 p.m., immediately after completing a 32-hour work shift, feeling extremely fatigued, feeling sleep deprived, experiencing imbalanced circadian rhythms, and having worked 95 hours that week.

9

33. While at the Fire Marshal's Office, Mr. Barbosa was interrogated by Defendants Meagher and Kavanagh, even though the Defendant City and Defendant Policymakers Cassano; Leonard; Vance Jr.; Hodgens; Dipadova; Byrnes, John Doe, and Jane Doe had never trained its employees, including Defendants Meagher and Kavanagh, or established an official policy on how to conduct a lawful interrogation in compliance with constitutional standards under the 4th, 5th, 6th, and 14th Amendment of the US Constitution to ensure that the rights of the Plaintiff were not violated such as the Plaintiff's right to be free from self-incrimination; the right to remain silent; and the right to be free from unreasonable searches and seizures of the Plaintiff's person; the right to speak with an attorney; Plaintiff's 14th Amendment right under the equal protection clause to be free from racial profiling, cognitive confirmation bias, and unlawful discrimination based on race, gender, and socio-economic status, and the Plaintiff's right to substantive and procedural due process.

34. The Defendants, including Meagher and Kavanagh, immediately began accusing Mr. Barbosa of starting the fires. The Plaintiff testified that the Fire Marshals began accusing Plaintiff of being untruthful approximately fifteen minutes into the interview, calling the Defendant a "liar."

35. Defendants, including Meagher and Kavanagh, repeatedly called Mr. Barbosa a "liar" and accused him of "bullshitting."

36. The accusatory custodial interrogation continued to escalate over the course of three hours. At one point, there were three Fire Marshals interrogating and accusing Mr. Barbosa, including Defendants, Meagher and Kavanagh, and an unidentified third Fire Marshal and Supervisor of the Defendants ("John Doe").

37. Defendants, including Meagher, Kavanagh, and John Doe, continued to question Mr. Barbosa in an accusatory coercive and heated manner, using at times a strong voice, telling

Plaintiff that Plaintiff "would not get out of there quickly if he kept lying." A reasonable person under such circumstances would not have felt free to leave; therefore, the Plaintiff was the subject of custodial interrogation and unreasonably seized in violation of the 4th Amendment by Defendants, including Meagher, Kavanagh, and John Doe.

38. The Fire Marshals told the Plaintiff that these were just "small, bullshit fires that weren't important."

39. During the custodial interrogation, Mr. Barbosa twice asked Defendants, including Meagher and Kavanagh, for an attorney, to which Defendant Meagher responded that Plaintiff would "get one in court." Mr. Barbosa requested an attorney when he was being read his rights and a second time when Mr. Barbosa was being transported to ECAB.

40. In determining when a duty to train, discipline, supervise, intervene, or direct is established, Plaintiff alleges that Defendant Policymakers Cassano; Leonard; Vance Jr.; Hodgens; Dipadova; Byrnes, John Doe, Jane Doe, and the City knew to a moral certainty that his or her employees such as Defendants, including Meagher, Doe, Kane, and Kavanagh would confront a given situation of a person such as Mr. Barbosa exercising their 5th Amendment right to counsel during a custodial interrogation conducted by fire marshals and other employees of the FDNY. The Plaintiff claims that the situation of a person such as Mr. Barbosa exercising their 5th Amendment right to counsel during a custodial interrogation either presented the Defendants, including Meagher, Doe, and Kavanagh with a difficult choice such as wondering about the existence of the 5th Amendment right to counsel of the sort that direction, intervention, discipline, and adequate training would make less difficult or that there is a history of employees mishandling the situation. The Plaintiff claims that Defendants, including Meagher, Doe, and Kavanagh made the wrong choice in the case at bar by telling Mr. Barbosa, in response to Plaintiff's request for an attorney

that Plaintiff would "get one [an attorney] in court," which deprived the Plaintiff of the 5th Amendment right to counsel and would frequently cause the deprivation of a citizen's constitutional rights, including the 5th Amendment right to counsel during a custodial interrogation. "Deliberate indifference" requires that city policymakers made a deliberate choice from among various alternatives not to fully train, discipline, supervise, or direct employees. Plaintiff claims that Defendant Policymakers Cassano; Leonard; Vance Jr.; Hodgens; Dipadova; Byrnes, John Doe, Jane Doe, and the City made a deliberate choice to not fully train, discipline, supervise, or direct employees such as Defendants, including Meagher, Doe, and Kavanagh in regards to understanding and honoring the 5th Amendment right to counsel during a custodial interrogation when Defendant Policymakers Cassano; Leonard; Vance Jr.; Hodgens; Dipadova; Byrnes, John Doe, Jane Doe, and the City could have 1) adopted or maintained a formal official policy or procedure on the 5th Amendment right to counsel during a custodial interrogation; 2) conducted a written examination for Defendants, including Meagher, Doe, and Kavanagh to review their basic knowledge of constitutional law prior to conducting custodial interrogations and conducting law enforcement activities such as gathering evidence of suspected crime; 3) conducted professional role playing training exercises where Defendants, including Meagher, Doe, Kane, and Kavanagh would engage in conducting practice custodial interrogations with supervisors or the FDNY Legal Affairs Unit to ensure that Defendants, including Meagher, Doe, and Kavanagh had a competent understanding of the 5th Amendment right to counsel; or 4) required Defendants, including Meagher, Doe, and Kavanagh to read the *Miranda-Edwards-Minnick-Montejo* line of cases and hand write a one page case brief on each case to the Defendant Policymakers Cassano; Leonard; Vance Jr.; Hodgens; Dipadova; Byrnes, John Doe, Jane Doe, and the City.

41. "The Sixth Amendment right to counsel serves two related goals: (1) minimizing the

imbalance of our adversary system between the accused and the government committed to prosecuting him, thereby (2) preserving the fairness and integrity of criminal trials." See Michael C. Mims, A Trap for the Unwary: The Sixth Amendment Right to Counsel After Montejo v. Louisiana, 71 La. L. Rev. (2010) Available at: http://digitalcommons.law.lsu.edu/lalrev/vol71/iss1/11

42. "Although a strict reading of the Sixth Amendment seems to protect only the right to assistance at trial, the Court has recognized over time that this guarantee encompasses a broader scope of protection and has thus extended the right to counsel to certain pretrial events. Such application of the Sixth Amendment is consistent with the modem criminal justice system. When the Framers drafted the Sixth Amendment, they had little need to be concerned with a right to counsel in pretrial proceedings because in their time such proceedings were insignificant." Id. "In the 1964 case of Massiah v. United States, 377 U.S. 201 (1964), the Supreme Court held that the right to counsel may apply outside of the courtroom during certain pretrial confrontations with the government." See Michael C. Mims, A Trap for the Unwary: The Sixth Amendment Right to Counsel After Montejo v. Louisiana, 71 La. L. Rev. (2010) Available at: http://digitalcommons.law.lsu.edu/lalrev/vol71/iss1/11

43. "The Fifth Amendment makes no specific mention of the right to counsel. However, in Miranda v. Arizona, the Supreme Court held that during custodial interrogation, the Fifth Amendment right against compulsory self-incrimination calls for a protective shield against the state. The Court concluded that an integral element of this protection is an entitlement to legal assistance. This right to have counsel present during custodial interrogation is vital to the Fifth Amendment privilege against self-incrimination, the Court reasoned, because it ensures that an individual's right to choose between speech and silence remains unfettered, and it mitigates the

dangers of coercion. Because the *Miranda* right is primarily an anti-compulsion safeguard, it focuses only on whether the suspect felt coerced to waive his rights and not upon deceptive police practices occurring outside of the presence of the suspect and entirely unknown to him. Furthermore, the *Miranda* right applies only when the suspect is (1) in custody and (2) under interrogation." See Michael C. Mims, A Trap for the Unwary: The Sixth Amendment Right to Counsel After Montejo v. Louisiana, 71 La. L. Rev. (2010) Available at: http://digitalcommons.law.lsu.edu/lalrev/vol71/iss1/11

44. "Although generally imposing relaxed standards for a valid Fifth Amendment waiver, the Supreme Court has created an absolute rule to prevent waiver in response to police-initiated interrogation once the accused actually invokes his right to counsel. Under *Edwards v. Arizona*, 451 U.S 477 (1981), once police administer a *Miranda* warning, if the suspect requests the assistance of counsel, interrogation must stop; any subsequent waiver made in response to government-initiated interrogation will be presumed invalid. The Supreme Court extended the *Edwards* cut-off rule in *Minnick v. Mississippi*, 498 U.S. 146 (1990), holding that once a suspect invokes his right to counsel, he cannot validly waive that right unless he initiates contact or is assisted by his attorney. Such protections are designed to prevent the government from badgering a defendant into waiving his previously asserted Miranda rights and are consistent with the Fifth Amendment's role in preventing compulsory self-incrimination." Id. "The Court explained that the logic behind Edwards and Jackson was the presumption that 'suspects who assert their right to counsel are unlikely to waive that right voluntarily' in subsequent interactions with police.'" See Michael C. Mims, A Trap for the Unwary: The Sixth Amendment Right to Counsel After Montejo v. Louisiana, 71 La. L. Rev. (2010) Available at: http://digitalcommons.law.lsu.edu/lalrev/vol71/iss1/11

45. First, Mr. Barbosa claims that Mr. Barbosa invoked the right to counsel when the fire marshals began ordering Mr. Barbosa to sign a Miranda waiver form, meaning the cut-off rule of *Edwards* should have applied and would have been honored, but for inadequate training, direction, intervention, discipline, and supervision. Second, Mr. Barbosa claims that Mr. Barbosa's Sixth Amendment waiver by signing the Miranda waiver form was not knowing and voluntary, and that the Miranda waiver form was invalid because the form was based on misrepresentations by fire marshals as to whether Mr. Barbosa had the 5th Amendment right to counsel during custodial interrogation.

46. The result of the Defendants repeated unlawful custodial interrogation of Mr. Barbosa was to unlawfully coerce and pressure Plaintiff into falsely confessing.

47. After three hours of coercive, accusatory custodial interrogation by Defendants, including Meagher, Kavanagh, and John Doe, Mr. Barbosa was forced into signing a "Bureau of Fire Investigation" Miranda form. The burden of proof is on the Defendants to show that the signed "Bureau of Fire Investigation" Miranda form was sign by the Plaintiff in a voluntary, knowing and intelligent manner, which Plaintiff claims that the Defendants cannot prove.

48. Defendants, including Meagher, Kavanagh, and John Doe, next forced Mr. Barbosa to write out and sign a one-page statement admitting to the fires.

49. Other than writing down specific dates of fires which were ordered, coerced, coached, instructed, and provided by the Defendants to the Plaintiff, Plaintiff's involuntary confession was vague, referencing fires that had occurred years ago. Defendants' once again make a post hoc, ergo propter hoc argument by arguing that there was probable cause to arrest the Plaintiff where Plaintiff "was able to provide details regarding the fires and to describe a fire they did not even know about." See (Def. Mot. to Dismiss, page 23). This is a correlative-based logistical fallacy that

the Defendants present to this federal court.

50. Defendants flawed and illogical probable cause assertion to arrest the Plaintiff is based on another post hoc, ergo propter hoc argument where Defendants' alleged probable cause of Mr. Barbosa was based on the faulty assumption that because there is a correlation between two variables that one apparently caused the other such as the two variables of (1) the Mr. Barbosa involuntary confession allegedly "was able to provide details regarding the fires and to describe a fire they did not even know about," and (2) a series of hotel fires, which is a correlative-based logistical fallacy of post hoc, ergo propter hoc where Defendant Meagher alleged and accused Mr. Barbosa of causing the series of hotel fires. See (Def. Mot. to Dismiss, page 23). Even if Mr. Barbosa, *arguendo*, had been a witness or had knowledge of fires that fire marshals were not aware of, this fact does not necessarily mean, without additional evidence, that Mr. Barbosa therefore committed those fires because the Defendants never eliminated the possibility that the Plaintiff was just an innocent bystander to the hotel fires. The Defendants' assertions of probable cause are based on a correlative-based logistical fallacy, which should not be entertained by the court as ever rising to the level of probable cause to ever arrest the Plaintiff. It was never objectively reasonable nor was there ever probable cause to place an extremely fatigued Plaintiff with imbalanced circadian rhythms under arrest.

51. In determining when a duty to train, discipline, supervise, intervene, control, or direct is established, Plaintiff alleges that Defendant Policymakers Cassano; Leonard; Vance Jr.; Hodgens; Dipadova; Byrnes, John Doe, Jane Doe, and the City knew to a moral certainty that his or her employees such as Defendants, including Meagher, Doe, and Kavanagh would confront a given situation of a person such as Mr. Barbosa being falsely arrested without probable cause in violation of the 4th Amendment by fire marshals and other employees of the FDNY; punitive secured bail as

a punishment in violation of 14th Amendment substantive due process; excessive secured bail in violation of the 8th Amendment; the 4th, 5th, 6th, and 14th Amendment standards of how to conduct a lawful interrogation in accordance with the *Miranda- Edwards-Minnick* line of cases; the 4th, 5th, 6th, and 14th Amendment standards of how to obtain a voluntary confession in accordance with the *Miranda-Edwards-Minnick-Montejo* line of cases; the 4th Amendment standards of how to conduct a lawful warrantless arrest; and 14th Amendment procedural due process standards on the prohibited conduct of intentionally making a false official statement. The Plaintiff claims that the situations of a person such as Mr. Barbosa being falsely arrested without probable cause in violation of the 4th Amendment; punitive secured bail as a punishment in violation of 14th Amendment substantive due process; excessive secured bail in violation of the 8th Amendment; breaches of the 4th, 5th, 6th, and 14th Amendment standards of how to conduct a lawful interrogation in accordance with the *Miranda- Edwards-Minnick* line of cases; breaches of the 4th, 5th, 6th, and 14th Amendment standards of how to obtain a voluntary confession in accordance with the *Miranda-Edwards-Minnick-Montejo* line of cases; breaches of the 4th Amendment standards of how to conduct a lawful warrantless arrest; and breaches of 14th Amendment procedural due process standards on the prohibited conduct of intentionally making a false official statement either presented the Defendants, including Meagher, Doe, and Kavanagh with a difficult choice such as wondering about whether probable cause existed to arrest Mr. Barbosa or whether an arrest warrant was needed under the 4th Amendment; punitive secured bail as a punishment in violation of 14th Amendment substantive due process; excessive secured bail in violation of the 8th Amendment; whether to abide by the 4th, 5th, 6th, and 14th Amendment standards of how to conduct a lawful interrogation <u>free from coercion</u> in accordance with the *Miranda- Edwards-Minnick* line of cases; whether to abide by the 4th, 5th, 6th, and 14th Amendment standards of how to obtain a

voluntary confession free from coercion in accordance with the *Miranda-Edwards-Minnick-Montejo* line of cases; whether to abide by the 4th Amendment standards of how to conduct a lawful warrantless arrest; and whether to abide by 14th Amendment procedural due process standards on the prohibited conduct of intentionally making a false official statement, of the sort that direction and adequate training would make less difficult or that there is a history of employees mishandling the situation where the FDNY makes an annual report that the NYC Bureau of Fire Investigation arrests over 500 people annually. The Plaintiff claims that Defendants, including Meagher, Doe, and Kavanagh made the wrong choice in the case at bar by falsely arresting Mr. Barbosa without probable cause and without a warrant, which deprived the Plaintiff of the 4th Amendment right to be free secure in his person against unreasonable searches and seizures; punitive secured bail as a punishment in violation of 14th Amendment substantive due process; excessive secured bail in violation of the 8th Amendment; breaches of the 4th, 5th, 6th, and 14th Amendment standards of how to conduct a lawful interrogation in accordance with the *Miranda- Edwards-Minnick* line of cases; breaches of the 4th, 5th, 6th, and 14th Amendment standards of how to obtain a voluntary confession in accordance with the *Miranda-Edwards-Minnick-Montejo* line of cases; breaches of the 4th Amendment standards of how to conduct a lawful warrantless arrest; and breaches of 14th Amendment procedural due process standards on the prohibited conduct of intentionally making a false official statement, and would frequently cause the deprivation of a citizen's constitutional rights, including the 4th Amendment right to be free from false arrest, malicious prosecution, false imprisonment, and excessive bail; punitive secured bail as a punishment in violation of 14th Amendment substantive due process; excessive secured bail in violation of the 8th Amendment; breaches of the 4th, 5th, 6th, and 14th Amendment standards of how to conduct a lawful interrogation free from coercion in accordance with the

*Miranda- Edwards-Minnick* line of cases; breaches of the 4th, 5th, 6th, and 14th Amendment standards of how to obtain a voluntary confession <u>free from coercion</u> in accordance with the *Miranda-Edwards-Minnick-Montejo* line of cases; breaches of the 4th Amendment standards of how to conduct a lawful warrantless arrest; and breaches of 14th Amendment procedural due process standards on the prohibited conduct of intentionally making a false official statement. "Deliberate indifference" requires that city policymakers made a deliberate choice from among various alternatives not to fully train or direct employees. Plaintiff claims that Defendant Policymakers Cassano; Leonard; Vance Jr.; Hodgens; Dipadova; Byrnes, John Doe, Jane Doe, and the City made a deliberate choice to not fully train or direct employees such as Defendants, including Meagher, Doe, and Kavanagh in regards to understanding and honoring the 5th Amendment right to counsel during a custodial interrogation; the rights of 14th Amendment substantive due process to be free from punitive secured bail as a punishment; the rights of 8th Amendment to be free from excessive secured bail; the 4th, 5th, 6th, and 14th Amendment standards of how to conduct a lawful interrogation in accordance with the *Miranda- Edwards-Minnick* line of cases; the 4th, 5th, 6th, and 14th Amendment standards of how to obtain a voluntary confession in accordance with the *Miranda-Edwards-Minnick-Montejo* line of cases; the 4th Amendment standards of how to conduct a lawful warrantless arrest; and 14th Amendment procedural due process standards on the prohibited conduct of intentionally making a false official statement when Defendant Policymakers Cassano; Leonard; Vance Jr.; Hodgens; Dipadova; Byrnes, John Doe, Jane Doe, and the City could have 1) adopted or maintained a formal official policy or procedure on the 5th Amendment right to counsel during a custodial interrogation; the rights of 14th Amendment substantive due process to be free from punitive secured bail as a punishment; the rights of 8th Amendment to be free from excessive secured bail; the 4th, 5th, 6th, and 14th

Amendment standards of how to conduct a lawful interrogation in accordance with the *Miranda-Edwards-Minnick* line of cases; the 4th, 5th, 6th, and 14th Amendment standards of how to obtain a voluntary confession in accordance with the *Miranda-Edwards-Minnick-Montejo* line of cases; the 4th Amendment standards of how to conduct a lawful warrantless arrest; and 14th Amendment procedural due process standards on the prohibited conduct of intentionally making a false official statement 2) conducted a written examination for Defendants, including Meagher, Doe, Kane, and Kavanagh to review their basic knowledge of constitutional law prior to conducting custodial interrogations; making statements; obtaining confessions; arresting citizens without a warrant; looking at the rights of 14th Amendment substantive due process to be free from punitive secured bail as a punishment; dealing with the rights of 8th Amendment to be free from excessive secured bail; and conducting law enforcement activities such as gathering evidence of suspected crime; 3) conducted professional role playing training exercises where Defendants, including Meagher, Doe, and Kavanagh would engage in conducting practice custodial interrogations and arrests and obtain simulated confessions with supervisors or the FDNY Legal Affairs Unit to ensure that Defendants, including Meagher, Doe, and Kavanagh had a competent understanding of the 5th Amendment right to counsel and the 4th, 5th, 6th, 8th, and 14th Amendments; or 4) required Defendants, including Meagher, Doe, and Kavanagh to read the *Miranda-Edwards-Minnick-Montejo* line of cases and cases involving the 4th, 5th, 6th, and 14th Amendment standards of how to conduct a lawful interrogation in accordance with the *Miranda- Edwards-Minnick* line of cases; the rights of 14th Amendment substantive due process to be free from punitive secured bail as a punishment; the rights of 8th Amendment to be free from excessive secured bail; the 4th, 5th, 6th, and 14th Amendment standards of how to obtain a voluntary confession free from coercion in accordance with the *Miranda-Edwards-Minnick-Montejo* line of cases; the 4th Amendment standards of how to

conduct a lawful warrantless arrest; and 14th Amendment procedural due process standards on the prohibited conduct of intentionally making a false official statement and hand write a one page case brief on each case to the Defendant Policymakers Cassano; Leonard; Vance Jr.; Hodgens; Dipadova; Byrnes, John Doe, Jane Doe, and the City. The Plaintiff was subjected by Defendants, including Meagher, Doe, Kane, McDonald, and Kavanagh to false arrest, excessive bail, malicious prosecution, deprivation of the 5th Amendment right to counsel; false imprisonment; deprivation of substantive and procedural due process; false statements; and denial of the right to a fair trial.

52. In determining when a duty to train or direct is established, Plaintiff alleges that Defendant Policymakers Cassano; Leonard; Vance Jr.; Hodgens; Dipadova; Byrnes, John Doe, Jane Doe, and the City knew to a moral certainty that his or her employees such as Defendants, including Meagher, Doe, and Kavanagh would confront a given situation of a person such as Mr. Barbosa being falsely arrested without probable cause in violation of the 4th Amendment by fire marshals and other employees of the FDNY. The Plaintiff claims that the situation of a person such as Mr. Barbosa being falsely arrested without probable cause where evidence was insufficient to comply with the corpus delicti rule in violation of the 4th Amendment by fire marshals and other employees of the FDNY either presented the Defendants, including Meagher, Doe, and Kavanagh with a difficult choice such as wondering about if probable cause existed to lawfully arrest Mr. Barbosa without a warrant and whether an arrest warrant was required of the sort that direction and adequate training would make less difficult or that there is a history of employees mishandling the situation where the FDNY has an annual report showing that the NYC Bureau of Fire Investigates arrests about 500 people annually. The Plaintiff claims that Defendants, including Meagher, Doe, and Kavanagh made the wrong choice in the case at bar by falsely arresting Mr. Barbosa without probable cause and without a warrant, which deprived the Plaintiff of the 4th Amendment and

would frequently cause the deprivation of a citizen's constitutional rights, including the 4th Amendment right to be secure in one's person against unreasonable searches and seizures. "Deliberate indifference" requires that city policymakers made a deliberate choice from among various alternatives not to fully train or direct employees. Plaintiff claims that Defendant Policymakers Cassano; Leonard; Vance Jr.; Hodgens; Dipadova; Byrnes, John Doe, Jane Doe, and the City made a deliberate choice to not fully train or direct employees such as Defendants, including Meagher, Doe, and Kavanagh in regards to understanding and honoring the 4th Amendment right to be secure in one's person against unreasonable searches and seizures when Defendant Policymakers Cassano; Leonard; Vance Jr.; Hodgens; Dipadova; Byrnes, John Doe, Jane Doe, and the City could have 1) adopted or maintained a formal official policy or procedure on the 4th Amendment right to be secure in one's person against unreasonable searches and seizures; 2) conducted a written examination Defendants, including Meagher, Doe, and Kavanagh to review their basic knowledge of constitutional law the 4th Amendment right to be secure in one's person against unreasonable searches and seizures and conducting law enforcement activities such as gathering evidence of suspected crime; 3) conducted professional role playing training exercises where Defendants, including Meagher, Doe, and Kavanagh would engage in conducting practice warrantless arrests with supervisors or the FDNY Legal Affairs Unit to ensure that Defendants, including Meagher, Doe, and Kavanagh had a competent understanding of the 4th Amendment right to be secure in one's person against unreasonable searches and seizures; or 4) required Defendants, including Meagher, Doe, and Kavanagh to read the *Mapp-Miranda-Edwards-Minnick-Montejo* line of cases and cases about the 4th Amendment right to be secure in one's person against unreasonable searches and seizures and hand write a one page case brief on each case to the Defendant Policymakers Cassano; Leonard; Vance Jr.; Hodgens; Dipadova; Byrnes,

John Doe, Jane Doe, and the City.

53. Thereafter, Defendants, including Meagher and Kavanagh, transported Mr. Barbosa to ECAB where the Defendant Brian McDonald took a videotaped statement of Mr. Barbosa. The fact that Defendant Brian McDonald from the NYDA conducted a custodial interrogation of the Plaintiff is factual evidence that Defendants Brian McDonald and Vance Jr. of the NYDA did not believe that there was probable cause to arrest or prosecute the Plaintiff.

54. Plaintiff testified that Plaintiff was again advised of his rights by ADA Brian McDonald, but that Mr. Barbosa didn't understand those rights and just agreed to them because Plaintiff wanted to get out of there and didn't want to "piss" anyone off.

55. Defendants Meagher & Kavanagh were present throughout the taped statement.

56. Cognitive confirmation bias is a tendency to seek out and interpret evidence in ways that fit existing beliefs. Behavioral confirmation bias, commonly referred to as the self-fulfilling prophecy, is a tendency for people to unwittingly procure support for their beliefs through their own behaviors.

57. Criminology is the study of crime. Criminology is an interdisciplinary field of both behavioral and social sciences, which uses scientific research from the fields of psychology, sociology, social anthropology, etc. Psychology is also a field of science. Therefore, any evidence that is admitted based on an alleged criminological or psychological principle is scientific evidence, which must be scientifically reliable to be admitted into evidence against a Defendant at trial or used to establish probable cause to arrest or prosecute.

58. In an article cited as Robert C. Parks & Michael J. Saks, Evidence Scholarship Reconsidered: Results of the Interdisciplinary Turn, 47 B.C. L. REV. 949, 957 (2006), it stated that,

"[P]sychology is the most important of the interdisciplinary threads that can be woven into evidence law scholarship. Evidence law is much concerned with the abilities of witnesses to perceive, to remember, and to report what they have observed. It is also concerned with the abilities of jurors to comprehend, evaluate, and draw inferences from the evidence presented to them, including their ability to assess the sincerity of lay witnesses and to understand and not be overwhelmed by expert witnesses. All of these are psychological issues. By psychology we are referring to experimental psychology, cognitive psychology, and social psychology, rather than to clinical psychology. Experimental studies that address topics such as memory, perception, judgment, inference, decisions under conditions of uncertainty, and jury behavior are plainly relevant to evidence law." ~ Robert C. Parks & Michael J. Saks, Evidence Scholarship Reconsidered: Results of the Interdisciplinary Turn, 47 B.C. L. REV. 949, 957 (2006).

59. "Research on selective exposure to information consistently shows that, after having made a decision, people prefer supporting over conflicting information." See Eva Jonas, Stefan Schulz-Hardt, Dieter Frey, and Norman Thelen. "Confirmation Bias in Sequential Information Search After Preliminary Decisions: An Expansion of Dissonance Theoretical Research on Selective Exposure to Information." Ludwig-Maximilians-University. Journal of Personality and Social Psychology. 2001, Vol. 80, No. 4, 557-571.

http://citeseerx.ist.psu.edu/viewdoc/download?doi=10.1.1.468.9574&rep=rep1&type=pdf

60. Mr. Barbosa's involuntary confession was not scientifically reliable in the fields of psychology or criminology to rise to the level of probable cause to arrest Mr. Barbosa where the custodial interrogation of Defendant Brian McDonald from the NYDA was the product of profiling and behavioral and cognitive confirmation bias in violation of the equal protection clause of the

24

14th Amendment where Defendants Meagher & Kavanagh were present throughout the taped statement and Defendant policy maker Vance Jr. never trained, supervised, intervened, disciplined, or directed Defendant Brian McDonald from the NYDA with a policy or procedure to mitigate or negate the criminological and psychological tendency to seek out and interpret evidence in ways that fit existing beliefs.

61. Mr. Barbosa was immediately arrested not only without probable cause, but based upon the correlative-based logistical fallacy of post hoc ergo propter hoc of involuntarily confessing in an inarticulate and vague manner to a crime that Mr. Barbosa did not commit. To reach the level of reasonable suspicion, reasonable articulable facts are needed. The false arrest of Mr. Barbosa doesn't even rise to the level of reasonable suspicion for the following reasons: (1) Mr. Barbosa was under psychological restraints at the time of the custodial interrogation where Mr. Barbosa was sleep deprived, extreme fatigue, and had imbalanced circadian rhythms, and this alone violates procedural due process and the 4th Amendment right to be free from the use of psychological restraints; (2) Outside of Mr. Barbosa's false confession, there was no evidence connecting Mr. Barbosa to the fires. (3) the involuntary confession is vague and scientifically unreliable hearsay in the fields of psychology and criminology; (4) the involuntary confession didn't even have an indicia of scientific reliability: a) Defendants Meagher & Kavanagh or Defendant Brian McDonald from the NYDA didn't gather any peer reviewed studies or scientific research to support whether the involuntary confession had an indicia of scientific reliability before deciding to arrest Mr. Barbosa; b) Defendants Meagher & Kavanagh and Defendant Brian McDonald from the NYDA didn't consult with a criminologist or psychologist to support whether the involuntary confession had an indicia of scientific reliability before deciding to arrest the sleep deprived Mr. Barbosa; (5) an alleged motive combined with fire marshals beseeching, coaching, accusing, hounding, and

demanding that a citizen write down a series of dates that occurred over the course of four years does not equal probable cause nor reasonable suspicion; (6) the use of correlative-based logistical fallacies does not establish probable cause or reasonable suspicion because logistical fallacies are not reasonable facts, but are rather just hunches; and (7) correlative-based logistical fallacies cannot be corroborated with cognitive confirmation bias to rise to the level of probable cause to arrest or reasonable suspicion, especially where Defendant Brian McDonald's interview with Mr. Barbosa was not an "exercise of independent discretion" by Defendant Brian McDonald, but rather an exercise of an inter-departmental, inter-dependent, and co-dependent abuse of absolute discretion between the FDNY and the NYDA where Defendants Meagher & Kavanagh were present throughout the taped statement, which any reasonable juror will find that Defendant Brian McDonald's interview with Mr. Barbosa constituted racial profiling and behavioral and cognitive confirmation bias in violation of the Plaintiff's right to equal protection under the 14th Amendment. An exercise of independent discretion would have required Defendants Meagher & Kavanagh to not have been present throughout the taped statement between Mr. Barbosa and Defendant Brian McDonald.

62. Mr. Barbosa immediately was terminated from his position at the Yotel Hotel and AlliedBarton Security Services as a result of this false arrest and excessive bail, in violation of the 8th Amendment and the secured bail set to punish Mr. Barbosa in violation of substantive due process. Mr. Barbosa lost thousands of dollars of income from this sudden employment termination that was caused by the false arrest, secured punitive bail set to punish Mr. Barbosa, and excessive bail by Defendants Meagher & Kavanagh, Jane and John Doe, City, and Defendants Brian McDonald and Vance Jr. .

63. Outside of Mr. Barbosa's false confession, there was no evidence connecting Mr.

Barbosa to the fires. There was never probable cause to arrest Mr. Barbosa based also on the following: (1) Mr. Barbosa's lack of sleep and his tiring work schedule in the hours prior to Plaintiff's vague statement; (2) the Fire Marshals' aggressiveness in questioning the Plaintiff and the number of fire marshals; (3) that the questions became accusatory within 20 minutes of the interview. Judge Dwyer stated that, "the scenario that the defendant paints of what happened is far more credible than the statements by the Fire Marshal;" and (4) Mr. Barbosa had and has a presumption of innocence and was never proven guilty.

64. No reasonable person could see why Mr. Barbosa would make such admissions if Mr. Barbosa wasn't feeling hard pressed by the fire marshals, especially admissions that had occurred years ago.

65. Mr. Barbosa was in custody before Mr. Barbosa made Plaintiff's first admission and, therefore, Miranda warnings should have been given to Mr. Barbosa prior to Plaintiff's first admission. Once Mr. Barbosa implicated himself, it was too late for Miranda warnings to be given without attenuation.

66. In determining when a duty to train, discipline, supervise, intervene, or direct is established, Plaintiff alleges that Defendant Policymaker Vance Jr.; John Doe, Jane Doe, and the City knew to a moral certainty that his or her employees such as Defendants, including Brian McDonald and Doe, would confront a given preventable situation of a person such as Mr. Barbosa being falsely arrested, excessive bail, and maliciously prosecuted without probable cause in violation of the 4th Amendment; the 4th, 5th, 8th, and 14th Amendment standards how the NYDA is prohibited under Bell v. Wolfish, 441 U.S. 520 (1979) at using secured bail as a punishment of a pre-trial detainee such as Mr. Barbosa, in violation of substantive due process and the right to be free from excessive bail when a pre-trial detainee has a presumption of innocence; the 4th, 5th, 6th,

and 14th Amendment standards how the NYDA may conduct a lawful custodial interrogation obtain a voluntary confession in accordance with the *Miranda- Edwards-Minnick-Montejo* line of cases; the 14th Amendment equal protection standards on how to reduce behavioral and cognitive confirmation bias in regards to conducting the NYDA's "exercise of independent discretion" in determining whether to criminally prosecute; and the 5th Amendment right to counsel during a custodial interrogation by fire marshals and other employees of the NYDA. The Plaintiff claims that the situation of a person such as Mr. Barbosa being falsely arrested without probable cause in violation of the 4th Amendment; the 4th, 5th, 6th, and 14th Amendment standards how the NYDA may conduct a lawful custodial interrogation obtain a voluntary confession in accordance with the *Miranda- Edwards-Minnick-Montejo* line of cases; the 4th, 5th, 8th, and 14th Amendment standards how the NYDA is prohibited under Bell v. Wolfish, 441 U.S. 520 (1979) at using secured bail as a punishment of a pre-trial detainee such as Mr. Barbosa with no prior history of failing to appear, no criminal history, and no arrest history, in violation of substantive due process and the right to be free from excessive bail when a pre-trial detainee has a presumption of innocence; the 14th Amendment equal protection standards on how to reduce behavioral and cognitive confirmation bias in regards to conducting the NYDA's "exercise of independent discretion" in determining whether to criminally prosecute; and the 5th Amendment right to counsel during a custodial interrogation by fire marshals and other employees of the NYDA either presented the Defendants, including Brian McDonald and Doe, with a difficult choice such as wondering about if probable cause existed to lawfully arrest Mr. Barbosa without a warrant; the 4th, 5th, 6th, and 14th Amendment standards how the NYDA may conduct a lawful custodial interrogation obtain a voluntary confession in accordance with the *Miranda- Edwards-Minnick-Montejo* line of cases; the 4th, 5th, 8th, and 14th Amendment standards on whether the NYDA is prohibited under Bell v.

Wolfish, 441 U.S. 520 (1979) at using secured bail as a punishment of a pre-trial detainee such as Mr. Barbosa, in violation of substantive due process and the right to be free from excessive bail when a pre-trial detainee has a presumption of innocence; the 14th Amendment equal protection standards on how to reduce racial profiling and behavioral and cognitive confirmation bias in regards to conducting the NYDA's "exercise of independent discretion" in determining whether to criminally prosecute; and whether an arrest warrant was required and the 5th Amendment right to counsel during a custodial interrogation of the sort that direction, intervention, discipline, supervision, and adequate training would make less difficult or that there is a history of employees mishandling the situation where the NYDA has an history of mishandling the situations of the 5th Amendment right to counsel during a custodial interrogation; the 4th, 5th, 8th, and 14th Amendment standards how that NYDA engages in routine prohibited conduct under Bell v. Wolfish, 441 U.S. 520 (1979) at using secured bail as a punishment of a pre-trial detainee such as Mr. Barbosa with no prior history of failing to appear, no criminal history, and no arrest history, in violation of substantive due process and the right to be free from excessive bail when a pre-trial detainee has a presumption of innocence; the 4th, 5th, 6th, and 14th Amendment standards how the NYDA may conduct a lawful custodial interrogation obtain a voluntary confession in accordance with the *Miranda- Edwards-Minnick-Montejo* line of cases; the 14th Amendment equal protection standards on how to reduce behavioral and cognitive confirmation bias in regards to conducting the NYDA's "exercise of independent discretion" in determining whether to criminally prosecute; and the 4th Amendment. The Plaintiff claims that Defendants, including Brian McDonald and Doe, made the wrong choice in the case at bar by requesting excessive bail, setting secured bail to punish a pre-trial detainee such as Mr. Barbosa with no prior history of failing to appear, no criminal history, and no arrest history, in violation of substantive due process and the right to be free from excessive

29

bail when a pre-trial detainee has a presumption of innocence; maliciously prosecuting, and falsely arresting Mr. Barbosa without probable cause and without a warrant, violating the 5th Amendment right to counsel during a custodial interrogation by denying Mr. Barbosa an attorney; and violating the 14th Amendment equal protection standards by engaging in racial profiling and behavioral and cognitive confirmation bias in regards to conducting the NYDA's "exercise of independent discretion" in determining whether to criminally prosecute; and violating the 4th, 5th, 6th, and 14th Amendment standards how the NYDA may conduct a lawful custodial interrogation obtain a voluntary confession in accordance with the *Miranda- Edwards-Minnick-Montejo* line of cases, which deprived the Plaintiff of the 4th and 5th and 14th Amendments and would frequently cause the deprivation of a citizen's constitutional rights, including the 4th Amendment right to be secure in one's person against unreasonable searches and seizures; violating the 4th, 5th, 8th, and 14th Amendment standards how the NYDA is prohibited under Bell v. Wolfish, 441 U.S. 520 (1979) at using secured bail as a punishment of a pre-trial detainee such as Mr. Barbosa with no prior history of failing to appear, no criminal history, and no arrest history, in violation of substantive due process and the right to be free from excessive bail when a pre-trial detainee has a presumption of innocence; the 4th, 5th, 6th, and 14th Amendment standards how the NYDA may conduct a lawful custodial interrogation obtain a voluntary confession in accordance with the *Miranda- Edwards-Minnick-Montejo* line of cases; the 14th Amendment equal protection standards on how to avoid racial profiling and behavioral and cognitive confirmation bias in regards to conducting the NYDA's "exercise of independent discretion" in determining whether to criminally prosecute; and the 5th Amendment right to counsel during a custodial interrogation. "Deliberate indifference" requires that city policymakers made a deliberate choice from among various alternatives not to fully train or direct employees. Plaintiff claims that Defendant Policymakers Vance Jr.; John Doe,

Jane Doe, and the City made a deliberate choice to not fully train or direct employees such as

Defendants, including Brian McDonald and Doe, in regards to understanding and honoring the 4th

Amendment right to be secure in one's person against unreasonable searches and seizures; the 4th,

5th, 8th, and 14th Amendment standards how the NYDA is prohibited under Bell v. Wolfish, 441

U.S. 520 (1979) at using secured bail as a punishment of a pre-trial detainee such as Mr. Barbosa

with no prior history of failing to appear, no criminal history, and no arrest history, in violation of

substantive due process and the right to be free from excessive bail when a pre-trial detainee has a

presumption of innocence; the 4th, 5th, 6th, and 14th Amendment standards how the NYDA may

conduct a lawful custodial interrogation obtain a voluntary confession in accordance with the

*Miranda- Edwards-Minnick-Montejo* line of cases; the 14th Amendment equal protection standards

on how to avoid behavioral and cognitive confirmation bias in regards to conducting the NYDA's

"exercise of independent discretion" in determining whether to criminally prosecute; and the 5th

Amendment right to counsel during a custodial interrogation when Defendant Policymakers Vance

Jr.; John Doe, Jane Doe, and the City could have 1) adopted or maintained a formal official policy

or procedure on the 4th Amendment right to be secure in one's person against unreasonable

searches and seizures; the 4th, 5th, 6th, and 14th Amendment standards how the NYDA may conduct

a lawful custodial interrogation obtain a voluntary confession in accordance with the *Miranda-*

*Edwards-Minnick-Montejo* line of cases; the 4th, 5th, 8th, and 14th Amendment standards how the

NYDA is prohibited under Bell v. Wolfish, 441 U.S. 520 (1979) at using secured bail as a

punishment of a pre-trial detainee such as Mr. Barbosa with no prior history of failing to appear,

no criminal history, and no arrest history, in violation of substantive due process and the right to be

free from excessive bail when a pre-trial detainee has a presumption of innocence; the 14th

Amendment equal protection standards on how to avoid behavioral and cognitive confirmation

bias in regards to conducting the NYDA's "exercise of independent discretion" in determining whether to criminally prosecute; and the 5th Amendment right to counsel during a custodial interrogation; 2) conducted a written examination Defendants, including Brian McDonald and Doe, to review their basic knowledge of constitutional law the 4th Amendment right to be secure in one's person against unreasonable searches and seizures; the 4th, 5th, 8th, and 14th Amendment standards how the NYDA is prohibited under Bell v. Wolfish, 441 U.S. 520 (1979) at using secured bail as a punishment of a pre-trial detainee such as Mr. Barbosa with no prior history of failing to appear, no criminal history, and no arrest history, in violation of substantive due process and the right to be free from excessive bail when a pre-trial detainee has a presumption of innocence; the 14th Amendment equal protection standards on how to avoid behavioral and cognitive confirmation bias in regards to conducting the NYDA's "exercise of independent discretion" in determining whether to criminally prosecute; the 5th Amendment right to counsel during a custodial interrogation; and conducting law enforcement activities such as gathering evidence of suspected crime; falsely arrest, excessive bail, secured bail used to punish a pre-trial detainee, and maliciously prosecution; 3) conducted professional role playing training exercises where Defendants, including Brian McDonald and Doe, would engage in conducting practice warrantless arrests; lawful prosecution, setting bail that is not excessive or used as a punishment; the 14th Amendment equal protection standards on how to avoid behavioral and cognitive confirmation bias in regards to conducting the NYDA's "exercise of independent discretion" in determining whether to criminally prosecute; the 4th, 5th, 6th, 8th, and 14th Amendment standards how the NYDA may conduct a lawful custodial interrogation obtain a voluntary confession in accordance with the *Miranda- Edwards-Minnick-Montejo* line of cases; and the 5th Amendment right exercise to obtain counsel during a custodial interrogation with supervisors or the NYDA to

ensure that Defendants, including Brian McDonald and Doe, had a competent understanding of the 4th Amendment right to be secure in one's person against unreasonable searches and seizures and the 5th Amendment right to counsel during a custodial interrogation; or 4) required Defendants, including Brian McDonald and Doe, to review the *Mapp-Miranda-Edwards-Minnick-Montejo* line of cases and cases about the 4th Amendment right to be secure in one's person against unreasonable searches and seizures, falsely arrest, excessive bail, and malicious prosecution; the 4th, 5th, 6th, and 14th Amendment standards how the NYDA may conduct a lawful custodial interrogation obtain a voluntary confession <u>free from coercion</u> in accordance with the *Miranda-Edwards-Minnick-Montejo* line of cases; the 4th, 5th, 8th, and 14th Amendment standards how the NYDA is prohibited under Bell v. Wolfish, 441 U.S. 520 (1979) at using secured bail as a punishment of a pre-trial detainee such as Mr. Barbosa with no prior history of failing to appear, no criminal history, and no arrest history, in violation of substantive due process and the right to be free from excessive bail when a pre-trial detainee has a presumption of innocence; the 14th Amendment equal protection standards on how to avoid racial profiling and behavioral and cognitive confirmation bias in regards to conducting the NYDA's "exercise of independent discretion" in determining whether to criminally prosecute; and hand write a one page case brief on each case to the Defendant Policymakers Vance Jr.; John Doe, Jane Doe, and the City.

67. Thereafter, Mr. Barbosa spent approximately 24-hours unlawfully confined until he was arraigned on those charges. Even a temporary loss of constitutional rights constitutes irreparable harm and irreparable injury.

68. Mr. Barbosa was then arraigned and excessive bail was set, in violation of the Plaintiff's 8th Amendment right to be free from excessive bail.

69. Bail was set as a result of the falsified information provided by Defendants Meagher &

Kavanagh, Jane and John Doe, and City to the Court and Defendants Cyrus Roberts Vance Jr. and Brian McDonald.

70. Mr. Barbosa remained in custody for approximately six days before he was able to make excessive bail, in violation of the 8th Amendment. No secured bail was needed to ensure Mr. Barbosa's presence at trial. Mr. Barbosa had no criminal history, no arrest history prior to September 20, 2013, and no history of ever failing to appear. Mr. Barbosa should have been released on personal recognizance or unsecured bail.

71. Secured bail was set against Mr. Barbosa for the illegitimate punitive governmental objective of punishment and general punitive deterrence against committing fires and other crimes. The secured bail was excessive and a punishment because the secured bail violated Mr. Barbosa's presumption of innocence, and there were no aggravating circumstances such as arrest history, criminal history, or any failures to appear on Mr. Barbosa's life record to justify secured bail against Mr. Barbosa when bail based on personal recognizance or unsecured bail would have been the least restrictive alternative to secured bail, which violates the Plaintiff's 1st Amendment freedoms of expression and speech. Thus, the Defendants Meagher & Kavanagh, Jane and John Doe, and City to the Court and Defendants Cyrus Roberts Vance Jr. and Brian McDonald violated Mr. Barbosa's substantive due process rights as a pre-trial detainee by demanding that secured excessive bail be issued against Mr. Barbosa as a punishment, which had the intended consequence of making Mr. Barbosa be suddenly fired from his job, be punished in jail for six days without due process and without any conviction of any wrongdoing, and lost wages.

72. In addition to providing false oral and written reports, Defendants, including Meagher and Kavanagh, gave false testimony before the grand jury.

73. After being released, Mr. Barbosa, while free, suffered the emotional consequences of

34

facing a significant jail sentence, if convicted.

74. Over the course of two years, Mr. Barbosa returned to various Courtrooms at least twenty-three times before his case was dismissed on the prosecutor's motion under fear or threat of incarceration.

75. Throughout this time, the Defendants, including Meagher and Kavanagh, continued to conspire and convey false information about Mr. Barbosa to the prosecutors and the Court. This conveyance of false information was preventable if Defendants, including Meagher and Kavanagh, had been provided with a policy against making false statements like the NYPD has in the NYPD Patrol Guide.

76. On April 29, 2015, a Suppression Hearing was held before Honorable Mark Dwyer. Both Mr. Barbosa and Defendant Meagher testified.

77. Judge Dwyer found that Mr. Barbosa's lack of sleep combined with the aggressive, accusatory nature of the custodial interrogation by the defendants warranted suppression.

78. Judge Dwyer also found Defendant Meagher's testimony to be incredible.

79. Fire Marshal Meagher testified that without defendant's confession, there would not have been enough evidence to arrest the defendant and that, in absence of the defendant's confession, defendant would have been free to leave.

80. Even with the involuntary confession, the evidence of the confession never satisfied probable cause under the corpus delicti rule where the corpus delicti rule prohibits the admission of an extrajudicial confession into evidence in a criminal case unless the prosecution introduces some evidence independent of the confession that the crime described in the confession actually occurred and can be connected to the suspect. The prosecution and ADA MacDonald never introduced any evidence independent of the confession that the crime described in the confession

actually occurred.

81. Mr. Barbosa's case was immediately dismissed by the District Attorney's Office following Judge Dwyer's ruling.

82. The prosecutors officially dismissed the case on October 8, 2015 as they could no longer meet their burden of proof. The malicious prosecution claim did not accrue until October 8, 2015 when the state criminal proceeding was dismissed, so Defendants' defenses of untimeliness are outlandish.

83. The Plaintiff would have preferred to have immediately sued in federal court during October of 2013 after false arrest. However, in *Younger v. Harris*, 401 U.S. 37 (1971), the U.S. Supreme Court held that abstention by federal courts is normally appropriate in cases involving state criminal proceedings until the state criminal proceedings have finished such as through a dismissal or a conviction. Therefore, any statute of limitations on any claims regarding this case are tolled from September 20, 2013 to October 8, 2015 under the *Younger* abstention doctrine unless the federal court wishes to repeal the *Younger* abstention doctrine.  Thus, based on tolling under the Younger abstention doctrine, the actual statute of limitations of the claims in this case is October 8, 2018, which is three years after the official dismissal of all criminal charges against Plaintiff Barbosa.

84. For the approximately 24-months following the incident, Mr. Barbosa suffered emotional distress as a result of fear and anxiety of retaliation by the Defendants including Meagher and Kavanagh.

85. For the approximately 24-months following the incident, Mr. Barbosa suffered emotional harm, sleep trouble and distress as a result of the pendency of this case, which had the potential of exposing him to a significant prison sentence.

86. Even after the case has been dismissed, Mr. Barbosa continues to suffer emotional harm as a result of the fear, embarrassment, and humiliation stemming from the Defendants constitutional violations.

87. During all of the events described, the individual Defendants acted maliciously and with intent to injure Plaintiff.

88. At all times relevant hereto, Defendants were involved in the decision to unlawfully detain and interrogate Plaintiff or failed to intervene in the actions of their fellow members when they observed them unlawfully detaining and interrogating Plaintiff.

89. As a direct and proximate result of the acts of Defendants, Plaintiff suffered the following injuries and damages, a violation of his rights pursuant to the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment of the United States Constitution, physical pain and suffering, emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, anxiety, lost wages, loss of liberty and harm to reputation.

90. The NYC Bureau of Fire Investigation: Investigative Management and Reporting System under the supervision of Defendant Commissioner Salvatore Cassano and Defendant Chief Fire Marshal Robert G. Byrnes and Defendants Leonard, Hodgens, and Dipadova published a 2013 Annual Report. See 2013 Annual Report. NYC Bureau of Fire Investigation: Investigative Management and Reporting System. 2013.

https://www1.nyc.gov/assets/fdny/downloads/pdf/2013_annual_final.pdf

91. In the NYC Bureau of Fire Investigation 2013 Annual Report, Section 5 provides an arrest report and summary of arrests. This report explains that the NYC Bureau of Fire Investigations between 01/01/2013 and 12/31/2013 recorded 511 arrests and out of the 511 arrests, made 363 by the Bureau of Fire Investigations. This report goes on to explain that out of the 363

arrests made by the NYC Bureau of Fire Investigations between 01/01/2013 and 12/31/2013, 141 arrests were for arson; 124 (fire-related crime); and 32 (arson-related crime). Thus, between 01/01/2013 and 12/31/2013, the NYC Bureau of Fire Investigations (BFI) would make one or two arrests on average daily. During 2013, the NYC BFI assisted law enforcement in 148 of out the total 511 arrests that were made where: 65 (arson arrests where BFI assisted law enforcement); 20 (arson related arrests where BFI assisted law enforcement); and 63 (other arrests where BFI assisted law enforcement). See (NYC, BFI, 2013 Annual Report, page 73).

92. Defendants Salvatore Cassano, Robert G. Byrnes, James Leonard, James C. Hodgens, Andrew Dipadova are each personally involved in this case. Defendants Cassano, Byrnes, Leonard, Hodgens, Dipadova would publish annual reports through the official NYC Bureau of Fire Investigation: Investigative Management and Reporting System. These public records document that Defendants Cassano, Byrnes, Leonard, Hodgens, Dipadova were personally and officially aware and notified that hundreds of FDNY warrantless false arrests, denying Miranda rights free from coercion, revoking licenses without procedural due process rights of notice or hearings, coercing involuntary confessions, false arrests, and custodial interrogations were being conducted on a routine basis without any assistance of law enforcement and without any formal law enforcement training or policies or procedures or supervision or direction or guidance.

93. The published annual reports substantiate the personal involvement of Defendants Cassano, Byrnes, Leonard, Hodgens, Dipadova as policymakers in this case where they were personally and officially aware and notified that their fire marshals including, but not limited to, Defendants Kane, Meagher, Doe, MacDonald, and Kavanaugh were conducting warrantless arrests, coerced confessions, license revocations, and custodial interrogations on a routine basis without any assistance of law enforcement and without any formal law enforcement training or

policies or procedures or supervision or direction or guidance.

94.      The Defendant, Andrew Dipadova, was the Chief of Fire Academy of the New York City Fire Department (FDNY) during 2013. Defendant James C. Hodgens was the Chief of Training of the New York City Fire Department (FDNY) during 2013. Policymakers Defendants Cassano, Byrnes, Leonard, James C. Hodgens, and Dipadova based on published annual reports by Defendant Hodgens, knew to a moral certainty that the lack of policies for Defendants Kane, Meagher, Doe, MacDonald, and Kavanaugh on the topics of procedures such as warrantless false arrests, Miranda, license revocation, coerced confessions, and other types of police work would, without training or direction through written policies, would deprive citizens including the Plaintiff of constitutional rights under the 1, 4, 5, 8, 9, and 14th Amendments concerning rights such as the right to be free from unreasonable seizures of the person, the right to counsel, Miranda rights without coercive tactics like sleep deprivation, false accusations of lying, psychological restraints, questioning a fatigued citizen, and ordering Plaintiff what to write down.

95.      The role of policymaker inherently and personally involves the policymaker in all conduct in which a formal policy was involved or should have been involved to a moral certainty.

96.      A policymaker can be held accountable for policy deficiencies.  The Monell standard was always intended to apply to deficient policymakers, regardless of whether those deficient policymakers hid in their offices while an acropolis of unconstitutional chaos reigned or if a deficient policymaker was at the scene of an alleged incident of unconstitutional conduct because the result is the same whether a citizen has been deprived of their rights under the normal standards of when a duty to train or direct can be established.

97.      An assertion of lack of personal involvement may possibly apply to Eric Hansen since Eric Hansen was not a policymaker, but rather a mere supervisor, but it would be against

public policy to allow a policymaker to assert a lack of personal involvement because to do so would encourage deficient policymakers to hide in their bureaucratic offices and ignore serious constitutional matters that those policymakers are publishing annually the facts and statistical figures that police work has been conducted by untrained firemen. Plaintiff's rights were violated because the FDNY failed to request the assistance of the NYPD in police matters.

98. _____ The easiest way to have prevented all of this would have been for policymakers Cassano, Byrnes, Leonard, James C. Hodgens, and Dipadova to make a formal policy that would have required the assistance of the NYPD in all FDNY warrantless arrests, custodial interrogations, Miranda warnings, obtaining confessions, providing all *Brady* material to the prosecution, and other police work, etc. Instead, policymakers Cassano, Byrnes, Leonard, James C. Hodgens, and Dipadova have allowed FDNY employees such as Kane, Meagher, Doe, MacDonald, and Kavanaugh to present citizens, including the Plaintiff, to not the NYPD, but rather as routine FDNY procedure to the District Attorney's Office for interview and to corroborate their incompetent FDNY investigation of the Plaintiff and other citizens. The preventable moral of this story is police work must be left to trained law enforcement, not firemen and prosecutors.

99. Defendant policymakers Cassano, Byrnes, Leonard, James C. Hodgens, Vance Jr., and Dipadova have made no effort to ensure that FDNY and NYDA employees such as Defendant Kane, Meagher, Doe, MacDonald, and Kavanaugh have complied with any standards of compliance with the New York State Law Enforcement Agency Accreditation Council, which has irreparably harmed the Plaintiff. No FDNY named Defendants are accredited by the New York State Law Enforcement Agency Accreditation Council. Why is the FDNY Bureau of Fire Investigation not accredited by the New York State Law Enforcement Agency Accreditation

Council?

100. It should gravely concern the federal court that policymakers Cassano, Byrnes, Leonard, James C. Hodgens, and Dipadova and defendant Meagher, Doe, and Kane the BFI currently has absolute discretion and no official supervisory direction or official policy on when or whether to ever invite well-trained law enforcement to assist BFI employees in any specific situation like when conducting law enforcement activities such as warrantless arrests; obtaining confessions; providing *Brady* materials to the prosecution, complying with the 5th Amendment right to counsel, when invoked; launching criminal investigations based on hunches and correlative-based logistical fallacies of post hoc ergo propter hoc, and custodial interrogations that NYC fire marshals have proven to be incompetent, loose cannons, and not well-trained or well-directed on conducting such law enforcement activities. The NYPD's current authorized uniformed strength is over 34,000. If the BFI isn't going to educate, train, and direct its employees, there should be an official policy that the BFI can no longer conduct law enforcement activities without supervision, direction, and assistance from an NYPD law enforcement officer who is purported to be well-trained, directed, and disciplined on how to properly conduct law enforcement activities because citizens like Mr. Barbosa in the case at bar are entitled to having basic constitutional rights enforced. The BFI engages in hundreds of incompetent arrests and custodial interrogations annually, and the Plaintiff wonders what the federal court will do about this well-pled, actual, imminent, and systemic problem in the NYC Fire Department. Would it please the court to entertain a F.R.Civ.P. Rule 23 notice of class action since the statute of limitations doesn't actually expire until October of 2018?

101. The Plaintiff was verbally ordered and coerced by Plaintiff's employer Tony Rodriguez to meet with Fire Marshals to review footage of the fire incidents. Tony Rodriguez

coercively ordered the Plaintiff to report to the offices of the Fire Marshalls at 251 Lafayette St. The date and time of the custodial interrogation of Plaintiff had been set and planned by Tony Rodriguez and Fire Marshals Kane, Meagher, and Kavanaugh. The Plaintiff was coercively ordered to report to the offices of the Fire Marshals instead of reporting to work at Yotel New York in which Plaintiff was scheduled and paid to be on duty. Fire Marshal Meagher substantiates and confirms in two occasions during the public hearing that took place on 4/29/2015. The first time was to DA Vera Varshavsky. (Please refer to page 39-40 in court transcripts for 4/29/2015). The second time was to Attorney Ryan Clark. (Please refer to page 97 in court transcripts for 4/29/2015).

102. Plaintiff feared an adverse employment action if the Plaintiff failed to obey the coercive orders of Plaintiff's boss Tony Rodriguez. Fire Marshals Kane, Meagher, and Kavanaugh coerced the Plaintiff to involuntarily show up at the offices of the Fire Marshalls at 251 Lafayette St. under the coercive fear of an adverse employment action, which occurred, even where the Plaintiff had complied with the coercive orders.

103. Prior to Plaintiff's arrest, Plaintiff had spent 2 weeks (September 8, 2013—September 19, 2013) working closely with 3 Fire Marshalls by the names of Thomas Kane, Michael Kavanaugh and Philip Meagher.

104. During those 2 weeks, the plaintiff gathered video surveillance footage for Defendants as well as photographs of the areas affected by the fires along with statements from hotel employees.

105. On the morning of September 19, 2013, Defendant Meagher coercively instructed the Plaintiff's supervisor at that time Mr. Tony Rodriguez to coercively send the Plaintiff to Defendant's office at 251 Lafayette St in Manhattan. According to Mr. Rodriguez, the Fire

Marshall's wanted to review video footage with Plaintiff. During the course of the entire questioning not once was there any review of footage.

106. Once the plaintiff arrived at the Fire Marshal location, F.M. Kavanaugh escorted the Plaintiff to a room on the 2nd floor of the building while accompanied by F.M. Meagher.

107. The Fire Marshals began to ask the Plaintiff a series of questions. F.M Kavanaugh began to question the Plaintiff, and Defendant Kavanaugh began to behave overly aggressive.

108. F.M. Kavanaugh statements were accusatory. Defendant Kavanaugh accused the Plaintiff of lying to Fire Marshals Kane, Meagher, and Kavanaugh in regards to Plaintiff's answers to Plaintiff's questions.

109. During that evening, F.M. Kavanaugh mentioned that Fire Marshals Kane, Meagher, and Kavanaugh had reports from the hotel key card system contradicting Plaintiff's answers to the questions of Fire Marshals Kane, Meagher, and Kavanaugh and other leads. Both F.M. Kavanaugh and F.M. Meagher coerced the Plaintiff for hours. F.M. Kavanaugh and F.M. Meagher also had their Supervisor Thomas Kane lean on Plaintiff as well.

110. One important note is that Defendant Meagher admitted in the public suppression hearing back in April 29th, that the key card report did not show any data of the Plaintiff using a key card around the time of the fires. During the unconstitutional custodial interrogation, the Plaintiff stated to both F.M. Kavanaugh and F.M. Meagher on numerous occasions that the Plaintiff never used Plaintiff's key card after a certain time, but Defendants Kavanaugh and F.M. Meagher continue to accuse Plaintiff of lying. These accusations of lying show a lack of training and incompetence by the Defendants Kavanaugh, Kane, City, Doe, and F.M. Meagher.

111. Defendants Kavanaugh, Kane, City, Doe, and F.M. Meagher detained the Plaintiff in the interview room without allowing the Plaintiff to contact anyone, including any attorney. The

Plaintiff asked F.M. Meagher several times to use the phone, in which all requests were denied. The Plaintiff was also misled by F.M. Meagher in regards to obtaining an attorney.

112. The Plaintiff was in a complete state of shock. The Plaintiff could not wrap Plaintiff's head around what was being told to Plaintiff, let alone understand what was happening.

113. Due to the Plaintiff's physical, psychological, and mental exhaustion from working extra hours to help with the investigation on top of working two jobs, the Fire Marshals Kavanaugh, Kane, City, Doe, and F.M. Meagher used the unconstitutional and illegal investigative tactics such as the denial of counsel and denial of right of access to anyone, which caused Plaintiff a traumatic psychological mental break down and Defendant Kavanaugh, Kane, City, Doe, and F.M. Meagher were able to get a coerced confession.

114. The Defendants Kavanaugh, Kane, City, Doe, and/or F.M. Meagher brought the Plaintiff a piece of paper and asked Plaintiff to begin writing down confessions for each of the fires. The Plaintiff did not know what to write, so the Defendants Kavanaugh, Kane, City, Doe, and F.M. Meagher began to dictate and coercively order everything that should be written on the paper. The Plaintiff didn't know the times or the dates of the fires, which is reasonable for any person who is exhausted, and fatigued, so the Marshals coercively provided the times and the dates of each of the fires, which is leading the witness and the criminal offense of witness tampering by manufacturing false evidence.

115. After the involuntary statements had been done, the Plaintiff was told that as routine that plaintiff would be taken down to the District Attorney's office in hand cuffs and after that, the Plaintiff could go home.

116. One important note for the federal court is the alarming fact that the Plaintiff was told that it was routine for fire marshals to take suspects to the district attorney's office for questioning

rather than a police station for questioning. Due to the incompetence of the Defendants Kavanaugh, Kane, City, Doe, and Meagher, District Attorney Vance Jr. and MacDonald are now implicated and accessories with the City's civil rights liability where the District Attorney's Office, including District Attorney Vance Jr. and MacDonald, engaged in police work and failed to prevent the engagement of a prosecutor in police work, which falls under the investigative exception to the shield of prosecutorial immunity, which no competent assistant district attorney would ever engage in due to the extremely high risk of civil rights liability.

117. There were no trained and competent NYPD officers involved in this case.

118. The Plaintiff was taken to meet with the District Attorney where Defendant MacDonald explained what will happen and asked to briefly repeat the statement of plaintiff given to the Fire Marshals Kavanaugh, Kane, City, Doe, and Meagher. The Plaintiff couldn't remember exactly what was told to Plaintiff to write, so the Plaintiff just gave a brief statement summarizing the statement. Plaintiff was told by the ADA Brian McDonald that everything would be fine, that at the time of the arraignment, the Plaintiff should plead guilty, and Plaintiff could then go home with no jail time.

119. As the Plaintiff was waiting for arraignment, Plaintiff had a chance to use the phone. Plaintiff had then been told that Plaintiff's story was wrongfully publicized on the news being repeated over and over on TV.

120. At approximately 12:00am, the Plaintiff was the last one to be called by the court for arraignment. The Plaintiff had decided to not go with what the ADA had ask of him to plead guilty and decide to plead not guilty. All the Plaintiff could remember was photographers taking pictures and the court saying $50,000 bail or bond. The Plaintiff was then taken back into custody.

121. The Plaintiff had been in contact with friends who had volunteer to find the bail bonds

man, and gather a collection of money, so that Plaintiff could be bailed out of jail.

122. It took an entire week to bail the Plaintiff out.

123. The case had been pending for quite some time. At first, the case was assign to Assistant District Attorney Brain McDonald (ADA McDonald). It is believed from the DA office were that ADA McDonald was let go back in March 2014, and Plaintiff's case was transfer to Assistant District Attorney Vera Varshavsky (ADA Varshavsky).

124. The Plaintiff started the case initially with a court appointed attorney by the name of Eugene Byrne. The Plaintiff was not able to contact Mr. Byrne as desired, and Mr. Byrne was only able to talk about Plaintiff's case in the court house. It was very uncomfortable, and the Plaintiff did not feel Plaintiff's case was being handled in the manner that it should. On June 2014, the Plaintiff retain attorney Ryan Clark (Clark) and 2 private investigators. The investigators were also the arson experts for Plaintiff's case.

125. On July 23 2014, the Plaintiffs defense team was able to provide the ADA Varshavsky with sworn statements from 6 alibi witnesses.

126. The Plaintiff also volunteered a DNA sample for a "match" that was found from one of the incidents in question. The results came back inconclusive.

127. Very early on in the case, Mr. Clark requested discovery such as reports from the fire marshals along with video footage from the hotel. ADA Varshavsky indicated there was no video.

128. It wasn't until January of 2017 that Plaintiff did discover there was video turned over to the fire marshals Kavanaugh, Kane, City, Doe, and Meagher, which is a blatant Brady violation.

129. Mr. Clark could not understand how the Fire Marshals had obtained video footage from one of the nights in question and never told ADA Mcdonald or ADA Varshavsky. Mr. Clark also questioned why the DA office did not have NYPD ever investigate if there had been any video

footage. Keep in mind the People Voluntary Disclosure Form (VDF) states the DA office had no physical evidence and no video footage, which was false and violated the procedural due process rights of the Plaintiff. See transcripts from 12/14/2014, 1/14/2015 2/11/2015.

130. On March 23 2015, Mr. Clark obtain the video footage along with all discovery and Rosario from the ADA Varshavsky.

131. Mr. Clark along with the plaintiff's private investigators reviewed all reports along with 3 camera views.

132. After Mr. Clark reviewed the video, Mr. Clark stated in Mr. Clark's opinion the footage was clearly exculpatory and also Brady material and was bothered on why the footage wasn't turn over to the defense before the Plaintiff had been indicted.

133. Also, according to Fire Marshal reports, Defendants Kavanaugh, Kane, City, Doe, and Meagher had downloaded video from 25 cameras. Mr. Clark questioned why Defendants Kavanaugh, Kane, City, Doe, and Meagher did not submit the additional 22 cameras to the defense.

134. The reports stated there were inconsistencies when it came to the Plaintiff's interview, and that's all F.M. Meagher wrote in Defendant's report. Mr. Clark expressed to ADA Varshavsky, in regards to the public suppression hearing, if Mr. Clark was to cross any of the 3 Fire Marshals about what Defendants knew, when Defendants knew it, and to the extent that it was questions that Defendants Kavanaugh, Kane, City, Doe, and Meagher were asking in the interrogation were truthful or not, any criminal defense attorney would need all the camera footages, fire alarm panel reports, and all reports of the key card system.

135. On March 26, 2015 Mr. Clark, the Fire Marshal and ADA Varshavsky had a private meeting to discuss more on the video footage, the 6 sworn alibi statements, and other facts that

arose. At the end of the meeting, ADA Varshavsky still wasn't convinced that the fact that this was truly a false confession case.

136. Mr. Clark proceeded with the public suppression hearing on April 29, 2015. On the first day of the public suppression hearing, ADA Varshavsky had given the remaining of the discovery to Mr. Clark. Due to our assigned judge having scheduling conflicts due to an ongoing trial, F.M. Meagher testified on April 29, 2015 and the Plaintiff testified on May 29, 2015

137. On July 1, 2015 the court decided to rule in the Plaintiffs favor and suppressed all statements. Those statements were the oral, written, and the video statement. The court found considerable doubt about the People's version of the custodial interrogation. The court also found actions of the Fire Marshals Kane, Meagher, and Kavanaugh to cause an issue of illegality.

138. On July 20, 2015, ADA Varshavsky decided not to appeal the Judge's decision.

139. On August 26, 2015, the DA office stated that the DA Office was in the process of dismissing the case. Fire Marshals Kane, Meagher, and Kavanaugh were awarded medals for their investigatory work in Plaintiff's false arrest.

140. Plaintiff paid the following expenses for court transcripts as follows: 10/16/13 --- 3 pages $16.20; 12/11/13 --- 3 pages $16.20; 12/23/13--- 2 pages   $10.20; 1/22/14 --- 3 pages $16.20; 2/26/14 ---3 pages    $16.20; 4/16/14 ---2 pages   $10.20; 5/14/14--- 3 pages   $16.20; 6/18/14 --- 3 pages $16.20; 6/19/14 ---3 pages   $16.20; 7/23/14 --- 4 pages $21.60; 9/17/14 --- 3 pages $16.20; 10/22/14 --- 3 pages $16.20; 12/14/14 --- 4 pages $21.60; 1/14/15 ---2 pages $10.80; 2/11/15 --- 9 pages   $48.60; 4/29/15 --- 156 pages $842.40; 5/29/15 --- 97 pages $523.00; 7/1/15 --- 6 pages $32.40; 7/20/15 --- 4 pages $21.60; 8/26/15 --- 2 pages $10.80, which totals $1,700.20. Note: All transcripts were purchased at the expedited rate of $5.40.

141. Plaintiff's expenses for Attorney's retainer fee for criminal defense Attorney Ryan

Clark was $15,000 with an initial fee paid to retain $5,000. Plaintiff's expenses for private arson investigators were a first retainer initial down payment of $100; a second payment of $669 on or about April 3, 2015; a second retainer initial payment $250; and last payment of $500.

142. Plaintiff's expenses for $50,000 Bail Bond was a total amount of bail bond of $10,000 with an initial payment of $5,000, and a final payment of $5,000, and $5,000 was never returned to Plaintiff.

143. On or about Thursday September 24, 2015, the Plaintiff arrived at the FDNY offices at 9 Metro Tech center Brooklyn NY 11201 to renew Plaintiff's FSD license which Plaintiff had had since 2003.

144. When the Plaintiff arrived, Plaintiff followed normal procedures. At arrival, Plaintiff filled out a form for renewal and waited to be called by Plaintiff's number.

145. Once Plaintiff's number had been called, Plaintiff arrived at the window to pay the renewal fees and then was asked to wait for Plaintiff's number to be called to obtain Plaintiff's card.

146. Once Plaintiff's number was called, Plaintiff was told that Plaintiff could not receive Plaintiff's FSD card. The Plaintiff asked why Plaintiff couldn't obtain the card, and Plaintiff was told that Plaintiff would have to speak to Mrs. Maryana Chouchereba. However, Defendant Chouchereba was at lunch and was not available at the time. The Plaintiff told the clerk that Plaintiff would wait for Mrs. Maryana Chouchereba because Plaintiff needed Plaintiff's license renewed to go back and continue working in security in which Plaintiff had be working for, at the time, 13 years.

147. The clerk asked the Plaintiff to wait for about 45 minutes, and the Plaintiff took a seat and waited.

148. Once again the Plaintiff was called, Plaintiff then spoke to Mrs. Maryana Chouchereba.

149. Defendant Chouccherba then told the Plaintiff that due to Plaintiff's pending charges Plaintiff was not able to have Plaintiff's renewed card handed to Plaintiff. Mrs. Maryana Chouchereba had asked the Plaintiff to return once all charges were dismiss, and Mrs. Maryana Chouchereba could help Plaintiff resolve the issue.

150. The Plaintiff obtained Mrs. Maryana Chouchereba's contact information from a business card Mrs. Maryana Chouchereba handed to Plaintiff.

151. Once the charges were dropped, the Plaintiff contacted Mrs. Maryana Chouchereba via email and explained that all charges were dismissed, and Plaintiff would like to proceed with the renewal of Plaintiff's FSD.

152. Mrs. Maryana Chouchereba then asked the Plaintiff to provide an original copy of the deposition form.

153. The Plaintiff did as asked and returned to the offices at 9 Metro Tech and handed the deposition form to Mrs. Maryana Chouchereba.

154. The Plaintiff had received Plaintiff's FSD license about a week or so later in the mail.

155. On or about Thursday September 24, 2015 at 5:15 PM, Plaintiff wrote an email to Defendant Maryana Chouchereba, which is an electronic public record, stating as follows:

156. "Hello Ms. Chouchereba,

As per our conversation earlier this afternoon at your office in 9 MetroTech Center you informed me that my Fire Safety Director license was void and that I can not renew my license due to the allegations and pending criminal charges I have against me.

157. You also mention to me that I would have to take over the school course, the

computerized exam and a onsite after I present a letter of deposition.

158. But most importantly you also stated that you couldn't look through my records to see the status of my other Certificate of Fitness (FSD) onsite that I took on the year of 2013 because you were to "busy" at the moment.

159. To be honest with you Ms. Chouchereba, I am unaware and never heard of this policy. Plus I never received any documentation stating that because of these allegations my licenses (FSD/EAP License(s) / Certificate of Fitness) would be voided.

160. Correct me if I'm wrong but to my understanding you are telling me that with my attempt to pay and renew my license before it expires, I am now being forced to let it expire until I receive my court deposition, and instead of reinstating my license, I will have to re apply as a new applicant after 11 years of being a certified FSD/EAP ?

161. I have copy my attorney on this email. I will have him reach out to the Assistant District Attorney on my case so someone could further explain this to me.

162. If you are not to busy tomorrow, please look into the system and let me know my status of my FSD license at SL Green 919 3rd Ave and Yotel New York at 570 10 Ave.

My name is Mariano Barbosa and my void license # 84238088. For security and privacy reasons I will not email you any further personal information.

I am expecting a response at your earliest convenience. Regards, Mariano Barbosa."

163. On Fri, Sep 25, 2015 at 9:32 AM, Chouchereba, Maryana (FDNY) <Maryana.Chouchereba@fdny.nyc.gov> wrote:

164. "Good morning Mr. Barbosa,

165. Please provide the court documents for our legal team to review and make a decision.

Best regards, Maryana Chouchereba FDNY/Public Certification 718-999-1102"

166. Plaintiff Mariano Barbosa [mailto:mbj.barbosa@gmail.com] sent on or about Friday, September 25, 2015 11:22 AM to Defendant Chouchereba, Maryana (FDNY) Subject: Re: Mariano Barbosa # 84238088 the following:

167. "Why wasn't I told that I was voided in the system on November 14, 2014 when I renewed my emergency action plan certificate of fitness?

168. Did an employee not do their job properly or the fire department is now maliciously singling me out?

169. Will sending court documents help rectify the problem or will this be another stall tactic to further delay my renewal process?

I really don't want to go back and forth through email, and seeing as though you seem to be unable to answer my questions, can you provide me with the name, email, and phone number of your legal team for my attorney."

170. On Fri, Sep 25, 2015 at 1:42 PM, Chouchereba, Maryana (FDNY) <Maryana.Chouchereba@fdny.nyc.gov> wrote:

171. "Mr. Barbosa,

Upon receipt, documents will be forwarded internally. Best regards, Maryana Chouchereba FDNY/Public Certification 718-999-1102"

172. On Oct 9, 2015, at 3:45 PM, Chouchereba, Maryana (FDNY) <Maryana.Chouchereba@fdny.nyc.gov> wrote:

173. "Mr. Barbosa,

174. Please submit the document with the original seal for review. Best regards, Maryana Chouchereba FDNY/Public Certification 718-999-1102"

175. By Tuesday, November 10, 2015 4:57 PM, Plaintiff had recovered Plaintiff's Fire

<u>Safety Director license.</u>

176. Mr. Barbosa suffers a pre and post-arraignment deprivations of liberty and property sufficient to implicate Mr. Barbosa's First, Fourth, Fifth, Sixth, 8th, and 14th Amendment rights.

## RULES OF LAW

Civil Action for Deprivation of Rights under Title 42 USC § 1983

Title 42 USC § 1983 states that,

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."

Civil Action for Conspiracy to Interfere with Civil Rights under Title 42 U.S. Code § 1985(3)

Title 42 U.S. Code § 1985(3) states that,

"If two or more persons in any State or Territory conspire… or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators."

Proceedings in Vindication of Civil Rights under Title 42 U.S. Code § 1988(b) (Attorney's Fees)

Title 42 U.S. Code § 1988(b) states,

"In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985… or section 13981 of this title, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs…"

The Supremacy Clause of the United States Constitution

The Supremacy Clause of Article 6 clause 2 of the United States Constitution provides,

"This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding."

The Fourth Amendment of the United States Constitution

The Fourth Amendment of the United States Constitution provides,

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Fifth Amendment Right to Counsel

The Fifth Amendment's right to counsel attaches upon invocation (i.e., when an attorney is requested), citing Montejo v. Louisiana, 556 U.S. 778 (2009).
The Fifth Amendment of the United States Constitution

"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

The Sixth Amendment of the United States Constitution

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense."

The Eighth Amendment of the United States Constitution

The right to be free from excessive bail.

The Fourteenth Amendment of the United States Constitution

Section 1 of the Fourteenth Amendment of the United States Constitution provides,

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Article 1 § 12 of the Constitution of the State of New York

Article 1 § 12 of the Constitution of the State of New York provides,

"The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

New York City Administrative Code Title 29, Chapter 2 2014 New York City Fire Code, Chapter 1 Administration Section FC 104.1 (Enforcement)

New York City Administrative Code Title 29, Chapter 2 2014 New York City Fire Code, Chapter 1 Administration Section FC 104.1 states as follows:

"The commissioner shall be responsible for the administration, interpretation and enforcement of this code. The commissioner may adopt policies, procedures, rules and regulations in order to clarify or implement the application of its provisions. Such interpretations, policies, procedures, rules and regulations shall be in compliance with the intent and purpose of this code and shall, except in those instances in which a modification has been granted, not have the effect of waiving requirements specifically provided for in this code."

New York City Administrative Code Title 29, Chapter 2 2014 New York City Fire Code, Chapter 1 Administration Section FC 104.10 (Fire investigations)

New York City Administrative Code Title 29, Chapter 2 2014 New York City Fire Code, Chapter 1 Administration Section FC 104.10 states as follows: "The commissioner may investigate the cause, origin and circumstances of any fire, explosion or other life safety hazard."

Municipal Liability

A Plaintiff seeking to hold a municipality liable under § 1983 must plead (1) a custom or policy that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right.

A Plaintiff may satisfy the first of those prongs in one of four ways: by alleging the

existence of (1) a custom or policy, (2) action taken or decisions made by policymakers that caused the violation of plaintiff's rights, (3) a practice so persistent and widespread that it constitutes a custom or usage, or (4) a failure to properly train, supervise, direct, discipline, or control municipal employees.

Failure to Train

177. The courts have provided a three-part analysis for determining when a duty to train is established: (1) Plaintiff has to show that a policy maker knows to a moral certainty that his or her employees will confront a given situation. (2) The plaintiff must show that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation. (3) The plaintiff must show that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights. "Deliberate indifference" requires that city policymakers made a deliberate choice from among various alternatives not to fully train employees.

Failure to Direct

178. The Plaintiff provides a three-part analysis for determining when a duty to direct is established: (1) Plaintiff has to show that a policy maker knows to a moral certainty that his or her employees will confront a given situation. (2) The plaintiff must show that the situation either presents the employee with a difficult choice of the sort that direction will make less difficult or that there is a history of employees mishandling the situation. (3) The plaintiff must show that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights. "Deliberate indifference" requires that city policymakers made a deliberate choice from among various alternatives not to fully direct employees.

CLAIMS FOR RELIEF IN ACCORDANCE WITH F.R.Civ.P. RULES 8(a) and 8(d)

## FIRST CAUSE OF ACTION
False Arrest and False Imprisonment Under
42  U.S.C. § 1983 Against Individual Defendants

179. The above paragraphs are here incorporated by reference as though fully set forth. Plaintiff repeats and re-alleges each and every allegation as if fully set forth herein.

180. The Defendants, including, but not limited to, Meagher, Kane, Hansen, Doe, McDonald, and Kavanagh, wrongfully and illegally arrested, detained and imprisoned Plaintiff.

181. Plaintiff makes an as applied and facial claim under Title 42 USC § 1983 where Defendants, including, but not limited to, Meagher, Doe, Kane, Hansen, McDonald, and Kavanagh, deprived Mr. Barbosa of the free exercise and enjoyment of the right of the people to be secure in Mr. Barbosa's person against unreasonable searches and seizures, which was violated without probable cause, supported by oath or affirmation, and without a warrant particularly describing the place to be searched, and the persons or things to be seized.

182. The wrongful, unjustifiable, and unlawful apprehension, arrest, detention, and imprisonment of Plaintiff by Defendants including, but not limited to, Meagher, Doe, McDonald, and Kavanagh, was carried out without a valid warrant, without sound logic, without Plaintiff's consent, and without probable cause or reasonable suspicion.

183. At all relevant time's Defendants including, but not limited to, Meagher, Doe, McDonald, and Kavanagh, acted forcibly in apprehending, arresting, and imprisoning Plaintiff.

184. Defendant Meagher's fire investigation of Mr. Barbosa was based on a *post hoc, ergo propter hoc* argument where Defendant Meagher's hunch against Mr. Barbosa was based on the faulty assumption that because there is a correlation between two variables such as (1) Mr. Barbosa allegedly being the only employee working at the time of each of the fires, and (2) a series

of hotel fires, that one caused the other, which is a correlative-based logistical fallacy of *post hoc, ergo propter hoc* where Defendant Meagher alleged and accused Mr. Barbosa of causing the series of hotel fires. The correlative-based logistical fallacy of *post hoc, ergo propter hoc* cannot be used to establish probable cause.

185. Other than writing down specific dates of fires which were ordered, coached, and provided by the Defendants including, but not limited to, Meagher, Doe, and Kavanagh, to the Plaintiff, Plaintiff's involuntary confession was vague, referencing fires that had occurred years ago. Defendants' including, but not limited to, Meagher, Doe, McDonald, and Kavanagh, once again make another post hoc, ergo propter hoc argument by arguing that there was probable cause to arrest the Plaintiff where Plaintiff "was able to provide details regarding the fires and to describe a fire they did not even know about." See (Def. Mot. to Dismiss, page 23). This is a correlative-based logistical fallacy that the Defendants present to the court.

186. Defendants argument that there was ever probable cause to arrest the Plaintiff is based on another post hoc, ergo propter hoc argument where Defendants' including, but not limited to, Meagher, Doe, McDonald, and Kavanagh, alleged probable cause of Mr. Barbosa was based on the faulty assumption that because there is a correlation between two variables such as (1) Mr. Barbosa involuntary confession allegedly "was able to provide details regarding the fires and to describe a fire they did not even know about," and (2) a series of hotel fires, that one apparently caused the other, which is a correlative-based logistical fallacy of post hoc, ergo propter hoc where Defendant Meagher alleged and accused Mr. Barbosa of causing the series of hotel fires. See (Def. Mot. to Dismiss, page 23). Even if Mr. Barbosa, arguendo, had been a witness or had knowledge of fires that fire marshals were not aware of, this does not necessarily mean, without additional evidence, that Mr. Barbosa therefore committed those fires because the Defendants never

eliminated the possibility that the Plaintiff was just an innocent bystander to the hotel fires. The Defendants' assertions of probable cause are based on a correlative-based logistical fallacy, which should not be entertained by the court as ever rising to the level of probable cause to ever arrest the Plaintiff. It was never objectively reasonable and there was never probable cause to place an extremely fatigued Plaintiff under arrest. Thus, the arrest violated Mr. Barbosa's 4th Amendment rights and rights under and Article 1 § 12 of the Constitution of the State of New York.

187. A vague and involuntary confession does not rise to the level of probable cause. The false arrest of Mr. Barbosa doesn't even rise to the level of reasonable suspicion for the following reasons: (1) Mr. Barbosa was under psychological restraints at the time of the custodial interrogation where Mr. Barbosa was sleep deprived, extreme fatigue, and had imbalanced circadian rhythms, and this alone violates procedural due process and the 4th Amendment right to be free from the use of psychological restraints; (2) Outside of Mr. Barbosa's false confession, there was no evidence connecting Mr. Barbosa to the fires. (3) the involuntary confession is vague and scientifically unreliable hearsay in the fields of psychology and criminology; (4) the involuntary confession didn't even have an indicia of scientific reliability: a) Defendants Meagher & Kavanagh or Defendant Brian McDonald from the NYDA didn't gather any peer reviewed studies or scientific research to support whether the involuntary confession had an indicia of scientific reliability before deciding to arrest Mr. Barbosa; b) Defendants Meagher & Kavanagh and Defendant Brian McDonald from the NYDA didn't consult with a criminologist or psychologist to support whether the involuntary confession had an indicia of scientific reliability before deciding to arrest the sleep deprived Mr. Barbosa; (5) an alleged motive combined with fire marshals beseeching, coaching, and demanding that a citizen write down a series of dates that occurred over the course of four years does not equal probable cause nor reasonable suspicion; (6)

the use of correlative-based logistical fallacies does not establish probable cause or reasonable suspicion because logistical fallacies are not reasonable facts, but are rather just hunches; and (7) correlative-based logistical fallacies cannot be corroborated with cognitive confirmation bias to rise to the level of probable cause to arrest or reasonable suspicion, especially where Defendant Brian McDonald's interview with Mr. Barbosa was not an "exercise of independent discretion" by Defendant Brian McDonald, but rather an exercise of an inter-departmental abuse of absolute discretion between the FDNY and the NYDA where Defendants Meagher & Kavanagh were present throughout the taped statement, which any reasonable juror will find that Defendant Brian McDonald's interview with Mr. Barbosa constituted behavioral and cognitive confirmation bias in violation of the Plaintiff's right to equal protection under the 14th Amendment. An exercise of independent discretion would have required Defendants Meagher & Kavanagh to not have been present throughout the taped statement between Mr. Barbosa and Defendant Brian McDonald.

188. Throughout this period, Plaintiff was unlawfully, wrongfully, and unjustifiably held under arrest, deprived of his liberty, imprisoned and falsely charged, in violation of Title 42 USC § 1983 under the 4th Amendment as applicable through the due process clause of the 14th Amendment of 1868, which is the supreme law of the land under the Supremacy Clause of Article 6 clause 2 of the United States Constitution and Article 1 § 12 of the Constitution of the State of New York.

189. There was never probable cause in accordance with the corpus delicti rule.

190. All of this occurred without any illegal conduct by Plaintiff.

191. Plaintiff's criminal Court case was dismissed and sealed.

192. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## SECOND CAUSE OF ACTION
Malicious Prosecution Under
42 U.S.C. § 1983 Against Individual Defendants

193. The above paragraphs are here incorporated by reference as though fully set forth. Plaintiff repeats and re-alleges each and every allegation as if fully set forth herein.

194. A person is maliciously prosecuted in violation of the Fourth Amendment to the U.S. Constitution when: 1) criminal proceedings are initiated or continued against him by the defendant; 2) the proceedings terminated in his favor; 3) there was no probable cause for the commencement or continuation of the proceeding; 4) a defendant's actions leading to the initiation of the proceeding against plaintiff were motivated by malice of the defendant; and 5) he suffers a post-arraignment deprivation of liberty sufficient to implicate his Fourth Amendment rights.

195. By their conduct, as described herein, Defendants Cyrus Roberts Vance Jr. and Brian McDonald, Meagher, Doe, and Kavanagh, and other Defendants are liable to Plaintiff for the violation of his constitutional right to be free from malicious prosecution under the Fourth and Fourteenth Amendments to the United States Constitution where Defendants Cyrus Roberts Vance Jr. and Brian McDonald and other Defendants initiated of continued criminal proceedings are initiated or continued against Mr. Barbosa. For the approximately 24-months following the initiated and continued state criminal proceedings of alleged arsons, Mr. Barbosa suffered emotional distress as a result of fear and anxiety of retaliation by the Defendants.

196. Mr. Barbosa suffers a pre and post-arraignment deprivation of liberty sufficient to implicate Mr. Barbosa's Fourth and 14th Amendment rights.

197. Defendants Cyrus Roberts Vance Jr., Meagher, Doe, Kavanagh, Brian McDonald and other Defendants, acting with malice, cognitive confirmation bias, and profiling, initiated a prosecution against Plaintiff and caused Plaintiff to be prosecuted from September 20, 2013 to

October 8, 2015 without probable cause.

198. Plaintiff makes an as applied and facial claim under Title 42 USC § 1983 for malicious prosecution where Defendants, including, but not limited to, Meagher, Vance Jr., Doe, McDonald, and Kavanagh, deprived Mr. Barbosa of the free exercise and enjoyment of the right of the people to be secure in Mr. Barbosa's person against unreasonable searches and seizures, which was violated without probable cause, supported by oath or affirmation, and without a warrant particularly describing the place to be searched, and the persons or things to be seized.

199. Plaintiff's prosecution was never supported by probable cause, nor was there ever probable cause for the commencement or continuation of the state criminal proceeding against Mr. Barbosa. Defendant Meagher's fire investigation of Mr. Barbosa was based on a *post hoc, ergo propter hoc* argument where Defendant Meagher's hunch against Mr. Barbosa was based on the faulty assumption that because there is a correlation between two variables such as (1) Mr. Barbosa allegedly being the only employee working at the time of each of the fires, and (2) a series of hotel fires, that one caused the other, which is a correlative-based logistical fallacy of *post hoc, ergo propter hoc* where Defendant Meagher alleged and accused Mr. Barbosa of causing the series of hotel fires. The correlative-based logistical fallacy of *post hoc, ergo propter hoc* cannot be used to establish probable cause.

200. Other than writing down specific dates of fires which were ordered, coached, and provided by the Defendants to the Plaintiff, Plaintiff's involuntary confession was vague, referencing fires that had occurred years ago. Defendants' make another post hoc, ergo propter hoc argument by arguing that there was probable cause to arrest the Plaintiff where Plaintiff "was able to provide details regarding the fires and to describe a fire they did not even know about." See (Def. Mot. to Dismiss, page 23). This is a correlative-based logistical fallacy that the Defendants

present to the court.

201. The malicious prosecution of Mr. Barbosa doesn't even rise to the level of reasonable suspicion for the following reasons: (1) Mr. Barbosa was under psychological restraints at the time of the custodial interrogation where Mr. Barbosa was sleep deprived, extreme fatigue, and had imbalanced circadian rhythms, and this alone violates procedural due process and the 4th Amendment right to be free from the use of psychological restraints; (2) Outside of Mr. Barbosa's false confession, there was no evidence connecting Mr. Barbosa to the fires. (3) the involuntary confession is vague and scientifically unreliable hearsay in the fields of psychology and criminology; (4) the involuntary confession didn't even have an indicia of scientific reliability: a) Defendants Meagher & Kavanagh or Defendant Brian McDonald from the NYDA didn't gather any peer reviewed studies or scientific research to support whether the involuntary confession had an indicia of scientific reliability before deciding to arrest Mr. Barbosa; b) Defendants Meagher & Kavanagh and Defendant Brian McDonald from the NYDA didn't consult with a criminologist or psychologist to support whether the involuntary confession had an indicia of scientific reliability before deciding to arrest the sleep deprived Mr. Barbosa; (5) an alleged motive combined with fire marshals beseeching, coaching, coercing, and demanding that a citizen write down a series of dates that occurred over the course of four years does not equal probable cause nor reasonable suspicion; (6) the use of correlative-based logistical fallacies does not establish probable cause or reasonable suspicion because logistical fallacies are not reasonable facts, but are rather just hunches; and (7) correlative-based logistical fallacies cannot be corroborated with cognitive confirmation bias to rise to the level of probable cause to arrest or reasonable suspicion, especially where Defendant Brian McDonald's interview with Mr. Barbosa was not an "exercise of independent discretion" by Defendant Brian McDonald, but rather an exercise of an inter-departmental conspiracy and abuse

of absolute discretion between the FDNY and the NYDA where Defendants Meagher & Kavanagh were present throughout the taped statement, which any reasonable juror will find that Defendant Brian McDonald's interview with Mr. Barbosa constituted behavioral and cognitive confirmation bias in violation of the Plaintiff's right to equal protection under the 14th Amendment. An exercise of independent discretion would have required Defendants Meagher & Kavanagh to not have been present throughout the taped statement between Mr. Barbosa and Defendant Brian McDonald.

202. <u>There was never probable cause in accordance with the corpus delicti rule.</u>

203. Defendants argument that there was ever probable cause to arrest the Plaintiff is based on another post hoc, ergo propter hoc argument where Defendants' alleged probable cause of Mr. Barbosa was based on the faulty assumption that because there is a correlation between two variables such as (1) Mr. Barbosa involuntary confession allegedly "was able to provide details regarding the fires and to describe a fire they did not even know about," and (2) a series of hotel fires, that one apparently caused the other, which is a correlative-based logistical fallacy of post hoc, ergo propter hoc where Defendant Meagher alleged and accused Mr. Barbosa of causing the series of hotel fires. See (Def. Mot. to Dismiss, page 23). Even if Mr. Barbosa, arguendo, had been a witness or had knowledge of fires that fire marshals were not aware of, this does not necessarily mean, without additional evidence, that Mr. Barbosa therefore committed those fires because the Defendants never eliminated the possibility that the Plaintiff was just an innocent bystander to the hotel fires. The Defendants' assertions of probable cause are based on a correlative-based logistical fallacy, which should not be entertained by the court as ever rising to the level of probable cause to ever arrest the Plaintiff. It was never objectively reasonable and there was never probable cause to place an extremely fatigued Plaintiff under arrest. Thus, the arrest violated Mr. Barbosa's 4th Amendment rights and rights under and Article 1 § 12 of the Constitution of the State of New

York.

204. A vague and involuntary confession does not rise to the level of probable cause.

205. The prosecution by Defendants Cyrus Roberts Vance Jr., Meagher, Doe, Kavanagh, and Brian McDonald and other Defendants of Plaintiff constituted malicious prosecution in that there was no basis for Plaintiff's arrest, yet Defendants Cyrus Roberts Vance Jr. and Brian McDonald and other Defendants continued with the prosecution, which was resolved in Plaintiff's favor. The criminal charges against Plaintiff Barbosa were officially dismissed on October 8, 2015.

206. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## THIRD CAUSE OF ACTION
Denial of Right to Fair Trial Under
42 U.S.C. § 1983 Against Individual Defendants

207. The above paragraphs are here incorporated by reference as though fully set forth. Plaintiff repeats and re-alleges each and every allegation as if fully set forth herein.

208. The individual Defendants created false evidence against Plaintiff, to wit, sworn documents and testimony alleging that Mr. Barbosa confessed to setting fires.

209. The individual Defendants forwarded false evidence to prosecutors in the New York County District Attorney's office.

210. In creating false evidence against Plaintiff, and in forwarding false information to prosecutors, the individual Defendants violated Plaintiff's right to a fair trial under the Due Process Clause of the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution.

211. The false evidence and false information used against the Plaintiff was not scientifically reliable in the fields of psychology or criminology, nor did the false evidence have any indicia of scientific reliability. Defendants Meagher & Kavanagh or Defendant Brian

McDonald from the NYDA didn't gather any peer reviewed studies or scientific research to support whether the involuntary confession had an indicia of scientific reliability before deciding to arrest Mr. Barbosa. Defendants Meagher & Kavanagh and Defendant Brian McDonald from the NYDA didn't consult with a criminologist or psychologist to support whether the involuntary confession had an indicia of scientific reliability before deciding to arrest the sleep deprived Mr. Barbosa. An alleged motive combined with fire marshals beseeching, coaching, and demanding that a citizen write down a series of dates that occurred over the course of four years does not equal probable cause nor reasonable suspicion. The use of correlative-based logistical fallacies does not establish probable cause or reasonable suspicion because logistical fallacies are not reasonable facts, but are rather just hunches. Correlative-based logistical fallacies cannot be corroborated with cognitive confirmation bias to rise to the level of probable cause to arrest or reasonable suspicion, especially where Defendant Brian McDonald's interview with Mr. Barbosa was not an "exercise of independent discretion" by Defendant Brian McDonald, but rather an exercise of an inter-departmental abuse of absolute discretion between the FDNY and the NYDA where Defendants Meagher & Kavanagh were present throughout the taped statement, which any reasonable juror will find that Defendant Brian McDonald's interview with Mr. Barbosa constituted behavioral and cognitive confirmation bias in violation of the Plaintiff's right to a fair trial under the 6th Amendment and to procedural and substantive due process and to equal protection under the 14th Amendment.

212. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

**FOURTH CAUSE OF ACTION**
Failure to Intervene Under
42 U.S.C. § 1983 Against Individual Defendants

213. The above paragraphs are here incorporated by reference as though fully set forth. Plaintiff repeats and re-alleges each and every allegation as if fully set forth herein.

214. Those Defendants <u>including, but not limited to, Cassano; NYC DA Cyrus Roberts Vance Jr.; FDNY Chief Fire Marshal Robert G. Byrnes; James Leonard; James C. Hodgens; Andrew Dipadova,</u> that were either present or deficient policymakers but did not actively participate in the aforementioned unlawful conduct observed such conduct, had an opportunity to prevent such conduct, or had a duty to intervene and prevent such conduct and failed to intervene in the false arrest, malicious prosecution, excessive bail, unlawful custodial interrogation, <u>failure to provide *Brady* material of a video recording to the Plaintiff</u>, procedural and substantive due process violations of a pre-trial detainee, denial of the 5th Amendment right to counsel, and involuntary confession, etc.

215. Accordingly, the Defendants, <u>including, but not limited to, Cassano; NYC DA Cyrus Roberts Vance Jr.; FDNY Chief Fire Marshal Robert G. Byrnes; James Leonard; James C. Hodgens; Andrew Dipadova</u> who failed to intervene violated the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments.

216. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

**FIFTH CAUSE OF ACTION**
42 USC § 1985(3) – Conspiracy to Deprive the Plaintiff of Constitutional or Civil Rights
as to John Doe 1 and John Doe

217. The above paragraphs are here incorporated by reference as though fully set forth. Plaintiff repeats and re-alleges each and every allegation as if fully set forth herein.

218. Title 42 U.S. Code § 1985(3) states that,

"If two or more persons in any State or Territory conspire… or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators."

219. Each Defendant, including, but not limited to including, but not limited to, FDNY Commissioner Salvatore Cassano; NYC DA Cyrus Roberts Vance Jr.; FDNY Chief Fire Marshal Robert G. Byrnes; James Leonard; James C. Hodgens; Andrew Dipadova; and Defendants John and Jane Doe 1 through 10, conspired and acted in both their official and individual capacities under color of law to deprive Plaintiff of Plaintiff's free exercise and enjoyment of civil, constitutional, and statutory rights to procedural due process. The Plaintiff was subjected to false arrest, excessive bail, malicious prosecution, deprivation of the 5th Amendment right to counsel; false imprisonment; deprivation of substantive and procedural due process; false statements; and denial of the right to a fair trial.

220. Many of these conspiracies were based not on reasonable suspicion, but based on incompetence or constitutional law and based on correlative-based logistical fallacies of post hoc ergo propter hoc arguments and irrational and flawed reasoning.

221. Secured bail was set to punish Mr. Barbosa who had no criminal history and no history of failing to appear for court, in violation of substantive due process under the 14th Amendment, as a result of the falsified information provided by Defendants Meagher & Kavanagh, Jane and John Doe, and City where each Defendant worked together and conspired against Mr. Barbosa to the Court and Defendants Cyrus Roberts Vance Jr. and Brian McDonald.

222. In deprivation of Mr. Barbosa's 4th, 5th, 6th, 8th, and 14th Amendment rights to be free from false arrest, malicious prosecution, a fair trial, bail that is not a punishment, <u>failure to provide</u>

*Brady* material of a video recording to the Plaintiff, substantive and procedural due process, the right to counsel during custodial interrogation, Defendant Brian McDonald's interview with Mr. Barbosa was not an "exercise of independent discretion" by Defendant Brian McDonald, but rather an exercise of an inter-departmental, inter-dependent, and co-dependent conspiracy and abuse of absolute discretion between the FDNY and the NYDA where Defendants Meagher & Kavanagh were present throughout the taped statement, which any reasonable juror will find that Defendant Brian McDonald's interview with Mr. Barbosa constituted racial profiling and behavioral and cognitive confirmation bias in violation of the Plaintiff's right to equal protection under the 14th Amendment. An exercise of independent discretion would have required Defendants Meagher & Kavanagh to not have been present throughout the taped statement between Mr. Barbosa and Defendant Brian McDonald.

223. Plaintiff has been damaged as a result of defendants' wrongful acts.

## SIXTH CAUSE OF ACTION
### Supervisory Liability for Failure to Train, Direct, and Discipline Under 42 U.S.C. § 1983 Against Individual Defendants

224. The above paragraphs are here incorporated by reference as though fully set forth. Plaintiff repeats and re-alleges each and every allegation as if fully set forth herein.

225. Defendants, including Meagher, Doe, and Kavanagh and their supervisors had actual or constructive knowledge that subordinate Defendants were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like Plaintiff. The Plaintiff was subjected by Defendants, including Meagher, Doe, McDonald, Maryana Chouchereba, Kane, and Kavanagh to false arrest, excessive bail, malicious prosecution, license revocation in violation of procedural due process, deprivation of the 5th Amendment right to counsel; false imprisonment; deprivation of substantive and procedural due process; false statements; and denial of the right to a

fair trial.

226. Defendants and their supervisor's response to this knowledge, including, but not limited to, defendant policymakers, including, but not limited to, FDNY Commissioner Salvatore Cassano; NYC DA Cyrus Roberts Vance Jr.; FDNY Chief Fire Marshal Robert G. Byrnes; James Leonard; James C. Hodgens; Andrew Dipadova; and Defendants John and Jane Doe 1 through 10 was so inadequate as to show a deliberate indifference to or tacit authorization of the offensive practices of Defendant subordinates.

227. Defendants, including Salvatore Cassano; NYC DA Cyrus Roberts Vance Jr.; FDNY Chief Fire Marshal Robert G. Byrnes; James Leonard; James C. Hodgens; Andrew Dipadova; and Defendants John and Jane Doe 1 through 10; and their supervisors failed to train, supervise, direct, discipline and control Defendant subordinates Meagher, Doe, Maryana Chouchereba, Kane, and Kavanagh with a history of misbehavior.

228. In determining when a duty to train, discipline, supervise, intervene, control, or direct is established, Plaintiff alleges that Defendant Policymakers Cassano; Leonard; Vance Jr.; Hodgens; Dipadova; Byrnes, John Doe, Jane Doe, and the City knew to a moral certainty that his or her employees such as Defendants, including Meagher, Doe, Maryana Chouchereba, Kane, and Kavanagh would confront a given situation of a person such as failure to provide *Brady* material of a video recording to the Plaintiff; FDNY license revocation in violation of procedural due process; Mr. Barbosa being falsely arrested without probable cause in violation of the 4th Amendment by fire marshals and other employees of the FDNY; punitive secured bail as a punishment in violation of 14th Amendment substantive due process; excessive secured bail in violation of the 8th Amendment; the 4th, 5th, 6th, and 14th Amendment standards of how to conduct a lawful interrogation free from coercion in accordance with the *Miranda- Edwards-Minnick* line of cases;

the 4th, 5th, 6th, and 14th Amendment standards of how to obtain a voluntary confession free from coercion in accordance with the *Miranda-Edwards-Minnick-Montejo* line of cases; the 4th Amendment standards of how to conduct a lawful warrantless arrest; and 14th Amendment procedural due process standards on the prohibited conduct of intentionally making a false official statement. The Plaintiff claims that the situations of a person such as Mr. Barbosa being falsely arrested without probable cause in violation of the 4th Amendment; punitive secured bail as a punishment in violation of 14th Amendment substantive due process; excessive secured bail in violation of the 8th Amendment; breaches of the 4th, 5th, 6th, and 14th Amendment standards of how to conduct a lawful interrogation free from coercion in accordance with the *Miranda- Edwards-Minnick* line of cases; breaches of the 4th, 5th, 6th, and 14th Amendment standards of how to obtain a voluntary confession free from coercion in accordance with the *Miranda-Edwards-Minnick-Montejo* line of cases; breaches of the 4th Amendment standards of how to conduct a lawful warrantless arrest; and breaches of 14th Amendment procedural due process standards on the prohibited conduct of intentionally making a false official statement either presented the Defendants, including Meagher, Doe, and Kavanagh with a difficult choice such as wondering about whether probable cause existed to arrest Mr. Barbosa or whether an arrest warrant was needed under the 4th Amendment; punitive secured bail as a punishment in violation of 14th Amendment substantive due process; excessive secured bail in violation of the 8th Amendment; whether to abide by the 4th, 5th, 6th, and 14th Amendment standards of how to conduct a lawful interrogation free from coercion in accordance with the *Miranda- Edwards-Minnick* line of cases; whether to abide by the 4th, 5th, 6th, and 14th Amendment standards of how to obtain a voluntary confession free from coercion in accordance with the *Miranda-Edwards-Minnick-Montejo* line of cases; whether to abide by the 4th Amendment standards of how to conduct a lawful warrantless

arrest; and whether to abide by 14th Amendment procedural due process standards on the prohibited conduct of intentionally making a false official statement, of the sort that direction and adequate training would make less difficult or that there is a history of employees mishandling the situation where the FDNY makes an annual report that the NYC Bureau of Fire Investigation arrests over 500 people annually. The Plaintiff claims that Defendants, including Meagher, Doe, and Kavanagh made the wrong choice in the case at bar by falsely arresting Mr. Barbosa without probable cause and without a warrant, which deprived the Plaintiff of the 4th Amendment right to be free secure in his person against unreasonable searches and seizures; punitive secured bail as a punishment in violation of 14th Amendment substantive due process; excessive secured bail in violation of the 8th Amendment; breaches of the 4th, 5th, 6th, and 14th Amendment standards of how to conduct a lawful interrogation in accordance with the *Miranda- Edwards-Minnick* line of cases; breaches of the 4th, 5th, 6th, and 14th Amendment standards of how to obtain a voluntary confession in accordance with the *Miranda-Edwards-Minnick-Montejo* line of cases; breaches of the 4th Amendment standards of how to conduct a lawful warrantless arrest; and breaches of 14th Amendment procedural due process standards on the prohibited conduct of intentionally making a false official statement, and would frequently cause the deprivation of a citizen's constitutional rights, including the 4th Amendment right to be free from false arrest, malicious prosecution, false imprisonment, and excessive bail; punitive secured bail as a punishment in violation of 14th Amendment substantive due process; excessive secured bail in violation of the 8th Amendment; breaches of the 4th, 5th, 6th, and 14th Amendment standards of how to conduct a lawful interrogation free from coercion in accordance with the *Miranda- Edwards-Minnick* line of cases; breaches of the 4th, 5th, 6th, and 14th Amendment standards of how to obtain a voluntary confession free from coercion in accordance with the *Miranda-Edwards-Minnick-Montejo* line of cases; breaches of the

4th Amendment standards of how to conduct a lawful warrantless arrest; and breaches of 14th Amendment procedural due process standards on the prohibited conduct of intentionally making a false official statement. "Deliberate indifference" requires that city policymakers made a deliberate choice from among various alternatives not to fully train or direct employees. Plaintiff claims that Defendant Policymakers Cassano; Leonard; Vance Jr.; Hodgens; Dipadova; Byrnes, John Doe, Jane Doe, and the City made a deliberate choice to not fully train or direct employees such as Defendants, including Meagher, Doe, and Kavanagh in regards to understanding and honoring the 5th Amendment right to counsel during a custodial interrogation; the rights of 14th Amendment substantive due process to be free from punitive secured bail as a punishment; the rights of 8th Amendment to be free from excessive secured bail; the 4th, 5th, 6th, and 14th Amendment standards of how to conduct a lawful interrogation in accordance with the *Miranda- Edwards-Minnick* line of cases; the 4th, 5th, 6th, and 14th Amendment standards of how to obtain a voluntary confession in accordance with the *Miranda-Edwards-Minnick-Montejo* line of cases; the 4th Amendment standards of how to conduct a lawful warrantless arrest; and 14th Amendment procedural due process standards on the prohibited conduct of intentionally making a false official statement when Defendant Policymakers Cassano; Leonard; Vance Jr.; Hodgens; Dipadova; Byrnes, John Doe, Jane Doe, and the City could have 1) adopted or maintained a formal official policy or procedure on the 5th Amendment right to counsel during a custodial interrogation; the rights of 14th Amendment substantive due process to be free from punitive secured bail as a punishment; the rights of 8th Amendment to be free from excessive secured bail; the 4th, 5th, 6th, and 14th Amendment standards of how to conduct a lawful interrogation in accordance with the *Miranda-Edwards-Minnick* line of cases; the 4th, 5th, 6th, and 14th Amendment standards of how to obtain a voluntary confession in accordance with the *Miranda-Edwards-Minnick-Montejo* line of cases; the

4th Amendment standards of how to conduct a lawful warrantless arrest; and 14th Amendment procedural due process standards on the prohibited conduct of intentionally making a false official statement 2) conducted a written examination for Defendants, including Meagher, Doe, and Kavanagh to review their basic knowledge of constitutional law prior to conducting custodial interrogations; making statements; obtaining confessions; arresting citizens without a warrant; looking at the rights of 14th Amendment substantive due process to be free from punitive secured bail as a punishment; dealing with the rights of 8th Amendment to be free from excessive secured bail; and conducting law enforcement activities such as gathering evidence of suspected crime; 3) conducted professional role playing training exercises where Defendants, including Meagher, Doe, and Kavanagh would engage in conducting practice custodial interrogations and arrests and obtain simulated confessions with supervisors or the FDNY Legal Affairs Unit to ensure that Defendants, including Meagher, Doe, Kane, and Kavanagh had a competent understanding of the 5th Amendment right to counsel and the 4th, 5th, 6th, 8th, and 14th Amendments; or 4) required Defendants, including Meagher, Doe, and Kavanagh to read the *Miranda-Edwards-Minnick-Montejo* line of cases and cases involving the 4th, 5th, 6th, and 14th Amendment standards of how to conduct a lawful interrogation in accordance with the *Miranda- Edwards-Minnick* line of cases; the rights of 14th Amendment substantive due process to be free from punitive secured bail as a punishment; the rights of 8th Amendment to be free from excessive secured bail; the 4th, 5th, 6th, and 14th Amendment standards of how to obtain a voluntary confession in accordance with the *Miranda-Edwards-Minnick-Montejo* line of cases; the 4th Amendment standards of how to conduct a lawful warrantless arrest; and 14th Amendment procedural due process standards on the prohibited conduct of intentionally making a false official statement and hand write a one page case brief on each case to the Defendant Policymakers Cassano; Leonard; Vance Jr.; Hodgens;

Dipadova; Byrnes, John Doe, Jane Doe, and the City.

229. In determining when a duty to train, discipline, supervise, intervene, or direct is established, Plaintiff alleges that Defendant Policymaker Vance Jr.; John Doe, Jane Doe, and the City knew to a moral certainty that his or her employees such as Defendants, including Brian McDonald and Doe, would confront a given preventable situation of a person such as Mr. Barbosa being falsely arrested, excessive bail, <u>failure to provide *Brady* material of a video recording to the Plaintiff,</u> and maliciously prosecuted without probable cause in violation of the 4th Amendment; the 4th, 5th, 8th, and 14th Amendment standards how the NYDA is prohibited under Bell v. Wolfish, 441 U.S. 520 (1979) at using secured bail as a punishment of a pre-trial detainee such as Mr. Barbosa, in violation of substantive due process and the right to be free from excessive bail when a pre-trial detainee has a presumption of innocence; the 4th, 5th, 6th, and 14th Amendment standards how the NYDA may conduct a lawful custodial interrogation obtain a voluntary confession in accordance with the *Miranda- Edwards-Minnick-Montejo* line of cases; the 14th Amendment equal protection standards on how to reduce behavioral and cognitive confirmation bias in regards to conducting the NYDA's "exercise of independent discretion" in determining whether to criminally prosecute; and the 5th Amendment right to counsel during a custodial interrogation by fire marshals and other employees of the NYDA. The Plaintiff claims that the situation of a person such as Mr. Barbosa being falsely arrested without probable cause in violation of the 4th Amendment; the 4th, 5th, 6th, and 14th Amendment standards how the NYDA may conduct a lawful custodial interrogation obtain a voluntary confession in accordance with the *Miranda- Edwards-Minnick-Montejo* line of cases; the 4th, 5th, 8th, and 14th Amendment standards how the NYDA is prohibited under Bell v. Wolfish, 441 U.S. 520 (1979) at using secured bail as a punishment of a pre-trial detainee such as Mr. Barbosa with no prior history of failing to appear, no criminal history, and no

arrest history, in violation of substantive due process and the right to be free from excessive bail when a pre-trial detainee has a presumption of innocence; the 14th Amendment equal protection standards on how to reduce behavioral and cognitive confirmation bias in regards to conducting the NYDA's "exercise of independent discretion" in determining whether to criminally prosecute; and the 5th Amendment right to counsel during a custodial interrogation by fire marshals and other employees of the NYDA either presented the Defendants, including Brian McDonald and Doe, with a difficult choice such as wondering about if probable cause existed to lawfully arrest Mr. Barbosa without a warrant; the 4th, 5th, 6th, and 14th Amendment standards how the NYDA may conduct a lawful custodial interrogation obtain a voluntary confession in accordance with the *Miranda- Edwards-Minnick-Montejo* line of cases; the 4th, 5th, 8th, and 14th Amendment standards on whether the NYDA is prohibited under Bell v. Wolfish, 441 U.S. 520 (1979) at using secured bail as a punishment of a pre-trial detainee such as Mr. Barbosa, in violation of substantive due process and the right to be free from excessive bail when a pre-trial detainee has a presumption of innocence; the 14th Amendment equal protection standards on how to reduce racial profiling and behavioral and cognitive confirmation bias in regards to conducting the NYDA's "exercise of independent discretion" in determining whether to criminally prosecute; and whether an arrest warrant was required and the 5th Amendment right to counsel during a custodial interrogation of the sort that direction, intervention, discipline, supervision, and adequate training would make less difficult or that there is a history of employees mishandling the situation where the NYDA has an history of mishandling the situations of the 5th Amendment right to counsel during a custodial interrogation; the 4th, 5th, 8th, and 14th Amendment standards how that NYDA engages in routine prohibited conduct under Bell v. Wolfish, 441 U.S. 520 (1979) at using secured bail as a punishment of a pre-trial detainee such as Mr. Barbosa with no prior history of failing to appear,

no criminal history, and no arrest history, in violation of substantive due process and the right to be free from excessive bail when a pre-trial detainee has a presumption of innocence; the 4th, 5th, 6th, and 14th Amendment standards how the NYDA may conduct a lawful custodial interrogation obtain a voluntary confession in accordance with the *Miranda- Edwards-Minnick-Montejo* line of cases; the 14th Amendment equal protection standards on how to reduce behavioral and cognitive confirmation bias in regards to conducting the NYDA's "exercise of independent discretion" in determining whether to criminally prosecute; and the 4th Amendment. The Plaintiff claims that Defendants, including Brian McDonald and Doe, made the wrong choice in the case at bar by requesting excessive bail, setting secured bail to punish a pre-trial detainee such as Mr. Barbosa with no prior history of failing to appear, no criminal history, and no arrest history, in violation of substantive due process and the right to be free from excessive bail when a pre-trial detainee has a presumption of innocence; maliciously prosecuting, and falsely arresting Mr. Barbosa without probable cause and without a warrant, violating the 5th Amendment right to counsel during a custodial interrogation by denying Mr. Barbosa an attorney; and violating the 14th Amendment equal protection standards by engaging in racial profiling and behavioral and cognitive confirmation bias in regards to conducting the NYDA's "exercise of independent discretion" in determining whether to criminally prosecute; and violating the 4th, 5th, 6th, and 14th Amendment standards how the NYDA may conduct a lawful custodial interrogation obtain a voluntary confession in accordance with the *Miranda- Edwards-Minnick-Montejo* line of cases, which deprived the Plaintiff of the 4th and 5th and 14th Amendments and would frequently cause the deprivation of a citizen's constitutional rights, including the 4th Amendment right to be secure in one's person against unreasonable searches and seizures; violating the 4th, 5th, 8th, and 14th Amendment standards how the NYDA is prohibited under Bell v. Wolfish, 441 U.S. 520 (1979) at

using secured bail as a punishment of a pre-trial detainee such as Mr. Barbosa with no prior history of failing to appear, no criminal history, and no arrest history, in violation of substantive due process and the right to be free from excessive bail when a pre-trial detainee has a presumption of innocence; the 4th, 5th, 6th, and 14th Amendment standards how the NYDA may conduct a lawful custodial interrogation obtain a voluntary confession in accordance with the *Miranda- Edwards-Minnick-Montejo* line of cases; the 14th Amendment equal protection standards on how to avoid racial profiling and behavioral and cognitive confirmation bias in regards to conducting the NYDA's "exercise of independent discretion" in determining whether to criminally prosecute; and the 5th Amendment right to counsel during a custodial interrogation. "Deliberate indifference" requires that city policymakers made a deliberate choice from among various alternatives not to fully train or direct employees. Plaintiff claims that Defendant Policymakers Vance Jr.; John Doe, Jane Doe, and the City made a deliberate choice to not fully train or direct employees such as Defendants, including Brian McDonald and Doe, in regards to understanding and honoring the 4th Amendment right to be secure in one's person against unreasonable searches and seizures; the 4th, 5th, 8th, and 14th Amendment standards how the NYDA is prohibited under Bell v. Wolfish, 441 U.S. 520 (1979) at using secured bail as a punishment of a pre-trial detainee such as Mr. Barbosa with no prior history of failing to appear, no criminal history, and no arrest history, in violation of substantive due process and the right to be free from excessive bail when a pre-trial detainee has a presumption of innocence; the 4th, 5th, 6th, and 14th Amendment standards how the NYDA may conduct a lawful custodial interrogation obtain a voluntary confession in accordance with the *Miranda- Edwards-Minnick-Montejo* line of cases; the 14th Amendment equal protection standards on how to avoid behavioral and cognitive confirmation bias in regards to conducting the NYDA's "exercise of independent discretion" in determining whether to criminally prosecute; and the 5th

Amendment right to counsel during a custodial interrogation when Defendant Policymakers Vance Jr.; John Doe, Jane Doe, and the City could have 1) adopted or maintained a formal official policy or procedure on the 4th Amendment right to be secure in one's person against unreasonable searches and seizures; adopted a policy on how and when to provide *Brady* material of a video recording to the Plaintiff; the 4th, 5th, 6th, and 14th Amendment standards how the NYDA may conduct a lawful custodial interrogation obtain a voluntary confession in accordance with the *Miranda- Edwards-Minnick-Montejo* line of cases; the 4th, 5th, 8th, and 14th Amendment standards how the NYDA is prohibited under Bell v. Wolfish, 441 U.S. 520 (1979) at using secured bail as a punishment of a pre-trial detainee such as Mr. Barbosa with no prior history of failing to appear, no criminal history, and no arrest history, in violation of substantive due process and the right to be free from excessive bail when a pre-trial detainee has a presumption of innocence; the 14th Amendment equal protection standards on how to avoid behavioral and cognitive confirmation bias in regards to conducting the NYDA's "exercise of independent discretion" in determining whether to criminally prosecute; and the 5th Amendment right to counsel during a custodial interrogation; 2) conducted a written examination Defendants, including Brian McDonald and Doe, to review their basic knowledge of constitutional law the 4th Amendment right to be secure in one's person against unreasonable searches and seizures; the 4th, 5th, 8th, and 14th Amendment standards how the NYDA is prohibited under Bell v. Wolfish, 441 U.S. 520 (1979) at using secured bail as a punishment of a pre-trial detainee such as Mr. Barbosa with no prior history of failing to appear, no criminal history, and no arrest history, in violation of substantive due process and the right to be free from excessive bail when a pre-trial detainee has a presumption of innocence; the 14th Amendment equal protection standards on how to avoid behavioral and cognitive confirmation bias in regards to conducting the NYDA's "exercise of independent

discretion" in determining whether to criminally prosecute; the 5th Amendment right to counsel during a custodial interrogation; and conducting law enforcement activities such as gathering evidence of suspected crime; falsely arrest, excessive bail, secured bail used to punish a pre-trial detainee, and maliciously prosecution; 3) conducted professional role playing training exercises where Defendants, including Brian McDonald and Doe, would engage in conducting practice warrantless arrests; lawful prosecution, setting bail that is not excessive or used as a punishment; the 14th Amendment equal protection standards on how to avoid behavioral and cognitive confirmation bias in regards to conducting the NYDA's "exercise of independent discretion" in determining whether to criminally prosecute; the 4[th], 5[th], 6[th], 8th, and 14th Amendment standards how the NYDA may conduct a lawful custodial interrogation obtain a voluntary confession in accordance with the *Miranda- Edwards-Minnick-Montejo* line of cases; and the 5th Amendment right exercise to obtain counsel during a custodial interrogation with supervisors or the NYDA to ensure that Defendants, including Brian McDonald and Doe, had a competent understanding of the 4th Amendment right to be secure in one's person against unreasonable searches and seizures and the 5th Amendment right to counsel during a custodial interrogation; or 4) required Defendants, including Brian McDonald and Doe, to review the *Mapp-Miranda-Edwards-Minnick-Montejo* line of cases and cases about the 4th Amendment right to be secure in one's person against unreasonable searches and seizures, falsely arrest, excessive bail, and malicious prosecution; the 4th, 5th, 6th, and 14th Amendment standards how the NYDA may conduct a lawful custodial interrogation obtain a voluntary confession in accordance with the *Miranda- Edwards-Minnick-Montejo* line of cases; the 4th, 5th, 8th, and 14th Amendment standards how the NYDA is prohibited under Bell v. Wolfish, 441 U.S. 520 (1979) at using secured bail as a punishment of a pre-trial detainee such as Mr. Barbosa with no prior history of failing to appear, no criminal history, and no

arrest history, in violation of substantive due process and the right to be free from excessive bail when a pre-trial detainee has a presumption of innocence; the 14th Amendment equal protection standards on how to avoid racial profiling and behavioral and cognitive confirmation bias in regards to conducting the NYDA's "exercise of independent discretion" in determining whether to criminally prosecute; and hand write a one page case brief on each case to the Defendant Policymakers Vance Jr.; John Doe, Jane Doe, and the City.

230. The Plaintiff was subjected to false arrest, excessive bail, license revocation in violation of procedural due process, malicious prosecution, deprivation of the 5th Amendment right to counsel; secured bail as a punishment; false imprisonment; deprivation of substantive and procedural due process; false statements; and denial of the right to a fair trial by Defendants, including Meagher, Doe, Kane, and Kavanagh.

231. Defendants, including FDNY Commissioner Salvatore Cassano; Cyrus Roberts Vance Jr.; FDNY Chief Fire Marshal Robert G. Byrnes; James Leonard; James C. Hodgens; Andrew Dipadova; Defendants John and Jane Doe 1 through 10; City; Meagher, Doe, Kane, and Kavanagh, and their supervisors acted with deliberate indifference or knowing, willful, or reckless inaction to Plaintiff's constitutional rights.

232. Defendants' supervisor's inaction, including, but not limited to, FDNY Commissioner Salvatore Cassano; Cyrus Roberts Vance Jr.; FDNY Chief Fire Marshal Robert G. Byrnes; James Leonard; James C. Hodgens; Andrew Dipadova; Defendants John and Jane Doe 1 through 10; and City was a direct and proximate cause of the violation of Plaintiff's constitutional rights and damages described hereinbefore.

SEVENTH CAUSE OF ACTION
Municipal Liability for Failure to Train, Failure to Direct/Adopt/Maintain/Implement Adequate
Policies, Failure to Discipline Under
42 U.S.C. § 1983 against City of New York

233. The above paragraphs are here incorporated by reference as though fully set forth. Plaintiff repeats and re-alleges each and every allegation as if fully set forth herein.

234. A Plaintiff seeking to hold a municipality liable under § 1983 must plead (1) a custom or policy that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right. A Plaintiff may satisfy the first of those prongs in one of four ways: by alleging the existence of (1) a custom or policy, (2) action taken or decisions made by policymakers that caused the violation of plaintiff's rights, (3) a practice so persistent and widespread that it constitutes a custom or usage, or (4) a failure to properly train, supervise, direct, discipline, or control municipal employees.

235. There is a three-part analysis for determining when a duty to train, direct, discipline, supervise, or control is established: (1) Plaintiff has to show that a policy maker knows to a moral certainty that his or her employees will confront a given situation. (2) The plaintiff must show that the situation either presents the employee with a difficult choice of the sort that training, direction, discipline, control, or supervision will make less difficult or that there is a history of employees mishandling the situation. (3) The plaintiff must show that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights.

236. "Deliberate indifference" requires that city policymakers made a deliberate choice from among various alternatives not to fully train, supervise, direct, intervene, or discipline employees.

237. The Plaintiff Barbosa states a claim for municipal liability for failure to train supervise, direct, intervene, control, and discipline against Defendant policymakers FDNY Commissioner Salvatore Cassano; Cyrus Roberts Vance Jr.; FDNY Chief Fire Marshal Robert G.

Byrnes; James Leonard; James C. Hodgens; Andrew Dipadova; Vance Jr., Defendants John and Jane Doe 1 through 10; and City.

238. The City of New York has a policy, practice and/or custom through which its FDNY and NYDA employees are inadequately trained, directed, intervened, disciplined, supervised, and retained by inadequate policymakers, including, but not limited to, defendant policymakers, including, but not limited to, FDNY Commissioner Salvatore Cassano; NYC DA Cyrus Roberts Vance Jr.; FDNY Chief Fire Marshal Robert G. Byrnes; James Leonard; James C. Hodgens; Andrew Dipadova; Defendants John and Jane Doe 1 through 10; and City. In determining when a duty to train, discipline, supervise, control, or direct is established, Plaintiff alleges that Defendant Policymakers Cassano; Leonard; Vance Jr.; Hodgens; Dipadova; Byrnes, John Doe, Jane Doe, and the City knew to a moral certainty that his or her employees such as Defendants, including Meagher, Doe, <u>Maryana Chouchereba, Kane</u>, and Kavanagh would confront a given situation of a person such as Mr. Barbosa being falsely arrested without probable cause in violation of the 4th Amendment by fire marshals and other employees of the FDNY; <u>license revocation in violation of procedural due process,</u> punitive secured bail as a punishment in violation of 14th Amendment substantive due process; excessive secured bail in violation of the 8th Amendment; the 4th, 5th, 6th, and 14th Amendment standards of how to conduct a lawful interrogation in accordance with the *Miranda- Edwards-Minnick* line of cases; the 4th, 5th, 6th, and 14th Amendment standards of how to obtain a voluntary confession in accordance with the *Miranda-Edwards-Minnick-Montejo* line of cases; the 4th Amendment standards of how to conduct a lawful warrantless arrest; and 14th Amendment procedural due process standards on the prohibited conduct of intentionally making a false official statement. The Plaintiff claims that the situations of a person such as Mr. Barbosa being falsely arrested without probable cause in violation of the 4th Amendment; punitive secured

bail as a punishment in violation of 14th Amendment substantive due process; excessive secured bail in violation of the 8th Amendment; breaches of the 4th, 5th, 6th, and 14th Amendment standards of how to conduct a lawful interrogation in accordance with the *Miranda- Edwards-Minnick* line of cases; breaches of the 4th, 5th, 6th, and 14th Amendment standards of how to obtain a voluntary confession in accordance with the *Miranda-Edwards-Minnick-Montejo* line of cases; breaches of the 4th Amendment standards of how to conduct a lawful warrantless arrest; and breaches of 14th Amendment procedural due process standards on the prohibited conduct of intentionally making a false official statement either presented the Defendants, including Meagher, Doe, and Kavanagh with a difficult choice such as wondering about whether probable cause existed to arrest Mr. Barbosa or whether an arrest warrant was needed under the 4th Amendment; punitive secured bail as a punishment in violation of 14th Amendment substantive due process; excessive secured bail in violation of the 8th Amendment; whether to abide by the 4th, 5th, 6th, and 14th Amendment standards of how to conduct a lawful interrogation in accordance with the *Miranda- Edwards-Minnick* line of cases; whether to abide by the 4th, 5th, 6th, and 14th Amendment standards of how to obtain a voluntary confession in accordance with the *Miranda-Edwards-Minnick-Montejo* line of cases; whether to abide by the 4th Amendment standards of how to conduct a lawful warrantless arrest; and whether to abide by 14th Amendment procedural due process standards on the prohibited conduct of intentionally making a false official statement, of the sort that direction and adequate training would make less difficult or that there is a history of employees mishandling the situation where the FDNY makes an annual report that the NYC Bureau of Fire Investigation arrests over 500 people annually. The Plaintiff claims that Defendants, including Meagher, Doe, <u>Kane</u>, and Kavanagh made the wrong choice in the case at bar by falsely arresting Mr. Barbosa without probable cause and without a warrant, which deprived the Plaintiff of the 4th Amendment right to

be free secure in his person against unreasonable searches and seizures; punitive secured bail as a punishment in violation of 14th Amendment substantive due process; excessive secured bail in violation of the 8th Amendment; breaches of the 4th, 5th, 6th, and 14th Amendment standards of how to conduct a lawful interrogation in accordance with the *Miranda- Edwards-Minnick* line of cases; breaches of the 4th, 5th, 6th, and 14th Amendment standards of how to obtain a voluntary confession in accordance with the *Miranda-Edwards-Minnick-Montejo* line of cases; breaches of the 4th Amendment standards of how to conduct a lawful warrantless arrest; and breaches of 14th Amendment procedural due process standards on the prohibited conduct of intentionally making a false official statement, and would frequently cause the deprivation of a citizen's constitutional rights, including the 4th Amendment right to be free from false arrest, malicious prosecution, false imprisonment, and excessive bail; punitive secured bail as a punishment in violation of 14th Amendment substantive due process; excessive secured bail in violation of the 8th Amendment; breaches of the 4th, 5th, 6th, and 14th Amendment standards of how to conduct a lawful interrogation in accordance with the *Miranda- Edwards-Minnick* line of cases; breaches of the 4th, 5th, 6th, and 14th Amendment standards of how to obtain a voluntary confession in accordance with the *Miranda-Edwards-Minnick-Montejo* line of cases; breaches of the 4th Amendment standards of how to conduct a lawful warrantless arrest; and breaches of 14th Amendment procedural due process standards on the prohibited conduct of intentionally making a false official statement. "Deliberate indifference" requires that city policymakers made a deliberate choice from among various alternatives not to fully train or direct employees. Plaintiff claims that Defendant Policymakers Cassano; Leonard; Vance Jr.; Hodgens; Dipadova; Byrnes, John Doe, Jane Doe, and the City made a deliberate choice to not fully train or direct employees such as Defendants, including Meagher, Doe, Kane, and Kavanagh in regards to understanding and honoring the 5th

Amendment right to counsel during a custodial interrogation; the rights of 14th Amendment substantive due process to be free from punitive secured bail as a punishment; license revocation under procedural due process, the rights of 8th Amendment to be free from excessive secured bail; the 4th, 5th, 6th, and 14th Amendment standards of how to conduct a lawful interrogation in accordance with the *Miranda- Edwards-Minnick* line of cases; the 4th, 5th, 6th, and 14th Amendment standards of how to obtain a voluntary confession in accordance with the *Miranda-Edwards-Minnick-Montejo* line of cases; the 4th Amendment standards of how to conduct a lawful warrantless arrest; and 14th Amendment procedural due process standards on the prohibited conduct of intentionally making a false official statement when Defendant Policymakers Cassano; Leonard; Vance Jr.; Hodgens; Dipadova; Byrnes, John Doe, Jane Doe, and the City could have 1) adopted or maintained a formal official policy or procedure on the 5th Amendment right to counsel during a custodial interrogation; the rights of 14th Amendment substantive due process to be free from punitive secured bail as a punishment; the rights of 8th Amendment to be free from excessive secured bail; the 4th, 5th, 6th, and 14th Amendment standards of how to conduct a lawful interrogation in accordance with the *Miranda- Edwards-Minnick* line of cases; the 4th, 5th, 6th, and 14th Amendment standards of how to obtain a voluntary confession in accordance with the *Miranda-Edwards-Minnick-Montejo* line of cases; the 4th Amendment standards of how to conduct a lawful warrantless arrest; and 14th Amendment procedural due process standards on the prohibited conduct of intentionally making a false official statement 2) conducted a written examination for Defendants, including Meagher, Doe, Maryana Chouchereba, Kane, and Kavanagh to review their basic knowledge of constitutional law prior to conducting custodial interrogations; making statements; obtaining confessions; arresting citizens without a warrant; looking at the rights of 14th Amendment substantive due process to be free from punitive secured

bail as a punishment; <u>license revocation under procedural due process</u>; dealing with the rights of 8th Amendment to be free from excessive secured bail; and conducting law enforcement activities such as gathering evidence of suspected crime; 3) conducted professional role playing training exercises where Defendants, including Meagher, Doe, and Kavanagh would engage in conducting practice custodial interrogations and arrests and obtain simulated confessions with supervisors or the FDNY Legal Affairs Unit to ensure that Defendants, including Meagher, Doe, and Kavanagh had a competent understanding of the 5th Amendment right to counsel and the 4th, 5th, 6th, 8th, and 14th Amendments; or 4) required Defendants, including Meagher, Doe, and Kavanagh to read the *Miranda-Edwards-Minnick-Montejo* line of cases and cases involving the 4th, 5th, 6th, and 14th Amendment standards of how to conduct a lawful interrogation in accordance with the *Miranda-Edwards-Minnick* line of cases; the rights of 14th Amendment substantive due process to be free from punitive secured bail as a punishment; the rights of 8th Amendment to be free from excessive secured bail; the 4th, 5th, 6th, and 14th Amendment standards of how to obtain a voluntary confession in accordance with the *Miranda-Edwards-Minnick-Montejo* line of cases; the 4th Amendment standards of how to conduct a lawful warrantless arrest; and 14th Amendment procedural due process standards on the prohibited conduct of intentionally making a false official statement and hand write a one page case brief on each case to the Defendant Policymakers Cassano; Leonard; Vance Jr.; Hodgens; Dipadova; Byrnes, John Doe, Jane Doe, and the City.

239. In determining when a duty to train, discipline, supervise, intervene, or direct is established, Plaintiff alleges that Defendant Policymaker Vance Jr.; John Doe, Jane Doe, and the City knew to a moral certainty that his or her employees such as Defendants, including Brian McDonald and Doe, would confront a given preventable situation of a person such as Mr. Barbosa being falsely arrested, excessive bail, and maliciously prosecuted without probable cause in

violation of the 4th Amendment; the 4th, 5th, 8th, and 14th Amendment standards how the NYDA is prohibited under Bell v. Wolfish, 441 U.S. 520 (1979) at using secured bail as a punishment of a pre-trial detainee such as Mr. Barbosa, in violation of substantive due process and the right to be free from excessive bail when a pre-trial detainee has a presumption of innocence; the 4th, 5th, 6th, and 14th Amendment standards how the NYDA may conduct a lawful custodial interrogation obtain a voluntary confession in accordance with the *Miranda- Edwards-Minnick-Montejo* line of cases; the 14th Amendment equal protection standards on how to reduce behavioral and cognitive confirmation bias in regards to conducting the NYDA's "exercise of independent discretion" in determining whether to criminally prosecute; and the 5th Amendment right to counsel during a custodial interrogation by fire marshals and other employees of the NYDA. The Plaintiff claims that the situation of a person such as Mr. Barbosa being falsely arrested without probable cause in violation of the 4th Amendment; the 4th, 5th, 6th, and 14th Amendment standards how the NYDA may conduct a lawful custodial interrogation obtain a voluntary confession in accordance with the *Miranda- Edwards-Minnick-Montejo* line of cases; the 4th, 5th, 8th, and 14th Amendment standards how the NYDA is prohibited under Bell v. Wolfish, 441 U.S. 520 (1979) at using secured bail as a punishment of a pre-trial detainee such as Mr. Barbosa with no prior history of failing to appear, no criminal history, and no arrest history, in violation of substantive due process and the right to be free from excessive bail when a pre-trial detainee has a presumption of innocence; the 14th Amendment equal protection standards on how to reduce behavioral and cognitive confirmation bias in regards to conducting the NYDA's "exercise of independent discretion" in determining whether to criminally prosecute; and the 5th Amendment right to counsel during a custodial interrogation by fire marshals and other employees of the NYDA either presented the Defendants, including Brian McDonald and Doe, with a difficult choice such as wondering about if probable

cause existed to lawfully arrest Mr. Barbosa without a warrant; the 4th, 5th, 6th, and 14th Amendment standards how the NYDA may conduct a lawful custodial interrogation obtain a voluntary confession in accordance with the *Miranda- Edwards-Minnick-Montejo* line of cases; the 4th, 5th, 8th, and 14th Amendment standards on whether the NYDA is prohibited under Bell v. Wolfish, 441 U.S. 520 (1979) at using secured bail as a punishment of a pre-trial detainee such as Mr. Barbosa, in violation of substantive due process and the right to be free from excessive bail when a pre-trial detainee has a presumption of innocence; the 14th Amendment equal protection standards on how to reduce racial profiling and behavioral and cognitive confirmation bias in regards to conducting the NYDA's "exercise of independent discretion" in determining whether to criminally prosecute; and whether an arrest warrant was required and the 5th Amendment right to counsel during a custodial interrogation of the sort that direction, intervention, discipline, supervision, and adequate training would make less difficult or that there is a history of employees mishandling the situation where the NYDA has an history of mishandling the situations of the 5th Amendment right to counsel during a custodial interrogation; the 4th, 5th, 8th, and 14th Amendment standards how that NYDA engages in routine prohibited conduct under Bell v. Wolfish, 441 U.S. 520 (1979) at using secured bail as a punishment of a pre-trial detainee such as Mr. Barbosa with no prior history of failing to appear, no criminal history, and no arrest history, in violation of substantive due process and the right to be free from excessive bail when a pre-trial detainee has a presumption of innocence; the 4th, 5th, 6th, and 14th Amendment standards how the NYDA may conduct a lawful custodial interrogation obtain a voluntary confession in accordance with the *Miranda- Edwards-Minnick-Montejo* line of cases; the 14th Amendment equal protection standards on how to reduce behavioral and cognitive confirmation bias in regards to conducting the NYDA's "exercise of independent discretion" in determining whether to criminally prosecute; and the 4th

Amendment. The Plaintiff claims that Defendants, including Brian McDonald and Doe, made the wrong choice in the case at bar by requesting excessive bail, setting secured bail to punish a pre-trial detainee such as Mr. Barbosa with no prior history of failing to appear, no criminal history, and no arrest history, in violation of substantive due process and the right to be free from excessive bail when a pre-trial detainee has a presumption of innocence; maliciously prosecuting, and falsely arresting Mr. Barbosa without probable cause and without a warrant, violating the 5th Amendment right to counsel during a custodial interrogation by denying Mr. Barbosa an attorney; and violating the 14th Amendment equal protection standards by engaging in racial profiling and behavioral and cognitive confirmation bias in regards to conducting the NYDA's "exercise of independent discretion" in determining whether to criminally prosecute; and violating the 4th, 5th, 6th, and 14th Amendment standards how the NYDA may conduct a lawful custodial interrogation obtain a voluntary confession in accordance with the *Miranda- Edwards-Minnick-Montejo* line of cases, which deprived the Plaintiff of the 4th and 5th and 14th Amendments and would frequently cause the deprivation of a citizen's constitutional rights, including the 4th Amendment right to be secure in one's person against unreasonable searches and seizures; violating the 4th, 5th, 8th, and 14th Amendment standards how the NYDA is prohibited under Bell v. Wolfish, 441 U.S. 520 (1979) at using secured bail as a punishment of a pre-trial detainee such as Mr. Barbosa with no prior history of failing to appear, no criminal history, and no arrest history, in violation of substantive due process and the right to be free from excessive bail when a pre-trial detainee has a presumption of innocence; the 4th, 5th, 6th, and 14th Amendment standards how the NYDA may conduct a lawful custodial interrogation obtain a voluntary confession in accordance with the *Miranda- Edwards-Minnick-Montejo* line of cases; the 14th Amendment equal protection standards on how to avoid racial profiling and behavioral and cognitive confirmation bias in regards to conducting the

NYDA's "exercise of independent discretion" in determining whether to criminally prosecute; and the 5th Amendment right to counsel during a custodial interrogation. "Deliberate indifference" requires that city policymakers made a deliberate choice from among various alternatives not to fully train or direct employees. Plaintiff claims that Defendant Policymakers Vance Jr.; John Doe, Jane Doe, and the City made a deliberate choice to not fully train or direct employees such as Defendants, including Brian McDonald and Doe, in regards to understanding and honoring the 4th Amendment right to be secure in one's person against unreasonable searches and seizures; the 4th, 5th, 8th, and 14th Amendment standards how the NYDA is prohibited under Bell v. Wolfish, 441 U.S. 520 (1979) at using secured bail as a punishment of a pre-trial detainee such as Mr. Barbosa with no prior history of failing to appear, no criminal history, and no arrest history, in violation of substantive due process and the right to be free from excessive bail when a pre-trial detainee has a presumption of innocence; the 4th, 5th, 6th, and 14th Amendment standards how the NYDA may conduct a lawful custodial interrogation obtain a voluntary confession in accordance with the *Miranda- Edwards-Minnick-Montejo* line of cases; the 14th Amendment equal protection standards on how to avoid behavioral and cognitive confirmation bias in regards to conducting the NYDA's "exercise of independent discretion" in determining whether to criminally prosecute; and the 5th Amendment right to counsel during a custodial interrogation when Defendant Policymakers Vance Jr.; John Doe, Jane Doe, and the City could have 1) adopted or maintained a formal official policy or procedure on the 4th Amendment right to be secure in one's person against unreasonable searches and seizures; the 4th, 5th, 6th, and 14th Amendment standards how the NYDA may conduct a lawful custodial interrogation obtain a voluntary confession in accordance with the *Miranda-Edwards-Minnick-Montejo* line of cases; the 4th, 5th, 8th, and 14th Amendment standards how the NYDA is prohibited under Bell v. Wolfish, 441 U.S. 520 (1979) at using secured bail as a

punishment of a pre-trial detainee such as Mr. Barbosa with no prior history of failing to appear, no criminal history, and no arrest history, in violation of substantive due process and the right to be free from excessive bail when a pre-trial detainee has a presumption of innocence; the 14th Amendment equal protection standards on how to avoid behavioral and cognitive confirmation bias in regards to conducting the NYDA's "exercise of independent discretion" in determining whether to criminally prosecute; and the 5th Amendment right to counsel during a custodial interrogation; 2) conducted a written examination Defendants, including Brian McDonald and Doe, to review their basic knowledge of constitutional law the 4th Amendment right to be secure in one's person against unreasonable searches and seizures; the 4th, 5th, 8th, and 14th Amendment standards how the NYDA is prohibited under Bell v. Wolfish, 441 U.S. 520 (1979) at using secured bail as a punishment of a pre-trial detainee such as Mr. Barbosa with no prior history of failing to appear, no criminal history, and no arrest history, in violation of substantive due process and the right to be free from excessive bail when a pre-trial detainee has a presumption of innocence; the 14th Amendment equal protection standards on how to avoid behavioral and cognitive confirmation bias in regards to conducting the NYDA's "exercise of independent discretion" in determining whether to criminally prosecute; the 5th Amendment right to counsel during a custodial interrogation; and conducting law enforcement activities such as gathering evidence of suspected crime; falsely arrest, excessive bail, secured bail used to punish a pre-trial detainee, and maliciously prosecution; 3) conducted professional role playing training exercises where Defendants, including Brian McDonald and Doe, would engage in conducting practice warrantless arrests; lawful prosecution, setting bail that is not excessive or used as a punishment; the 14th Amendment equal protection standards on how to avoid behavioral and cognitive confirmation bias in regards to conducting the NYDA's "exercise of independent discretion" in

determining whether to criminally prosecute; the 4th, 5th, 6th, 8th, and 14th Amendment standards how the NYDA may conduct a lawful custodial interrogation obtain a voluntary confession in accordance with the *Miranda- Edwards-Minnick-Montejo* line of cases; and the 5th Amendment right exercise to obtain counsel during a custodial interrogation with supervisors or the NYDA to ensure that Defendants, including Brian McDonald and Doe, had a competent understanding of the 4th Amendment right to be secure in one's person against unreasonable searches and seizures and the 5th Amendment right to counsel during a custodial interrogation; or 4) required Defendants, including Brian McDonald and Doe, to review the *Mapp-Miranda-Edwards-Minnick-Montejo* line of cases and cases about the 4th Amendment right to be secure in one's person against unreasonable searches and seizures, falsely arrest, excessive bail, and malicious prosecution; the 4th, 5th, 6th, and 14th Amendment standards how the NYDA may conduct a lawful custodial interrogation obtain a voluntary confession in accordance with the *Miranda- Edwards-Minnick-Montejo* line of cases; the 4th, 5th, 8th, and 14th Amendment standards how the NYDA is prohibited under Bell v. Wolfish, 441 U.S. 520 (1979) at using secured bail as a punishment of a pre-trial detainee such as Mr. Barbosa with no prior history of failing to appear, no criminal history, and no arrest history, in violation of substantive due process and the right to be free from excessive bail when a pre-trial detainee has a presumption of innocence; the 14th Amendment equal protection standards on how to avoid racial profiling and behavioral and cognitive confirmation bias in regards to conducting the NYDA's "exercise of independent discretion" in determining whether to criminally prosecute; and hand write a one page case brief on each case to the Defendant Policymakers Vance Jr.; John Doe, Jane Doe, and the City.

240. The Plaintiff was subjected to false arrest, excessive bail, malicious prosecution, deprivation of the 5th Amendment right to counsel; secured bail as punishment; false

imprisonment; deprivation of substantive and procedural due process; false statements; and denial of the right to a fair trial by Defendants, including Meagher, Doe, and Kavanagh.

241. The City of New York is liable for its deliberate indifference to the consequences of this policy, practice and/or custom, and for failing to train, supervise, direct, discipline and/or retain those employees who engage in unconstitutional activity and engage in misconduct.

242. The City of New York is liable for the decisions and customs of its final policymakers by inadequate policymakers, including, but not limited to, defendant policymakers, including, but not limited to, FDNY Commissioner Salvatore Cassano; NYC DA Cyrus Roberts Vance Jr.; FDNY Chief Fire Marshal Robert G. Byrnes; James Leonard; James C. Hodgens; Andrew Dipadova; Defendants John and Jane Doe 1 through 10 to create, promulgate and perpetuate this policy, practice and/or custom.

243. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## EIGHTH CAUSE OF ACTION

Municipal Liability for Failure to Direct/Adopt/Maintain/Implement Adequate Policies in breach of New York City Administrative Code Title 29, Chapter 2 2014 New York City Fire Code, Chapter 1 Administration Section FC 104.1 Under 42 U.S.C. § 1983 against City of New York and Defendant

New York City Administrative Code Title 29, Chapter 2 2014 New York City Fire Code, Chapter 1 Administration Section FC 104.1 (Enforcement)

New York City Administrative Code Title 29, Chapter 2 2014 New York City Fire Code, Chapter 1 Administration Section FC 104.1 states as follows:

"The commissioner shall be responsible for the administration, interpretation and enforcement of this code. The commissioner may adopt policies, procedures, rules and regulations in order to clarify or implement the application of its provisions. Such interpretations, policies, procedures, rules and regulations shall be in compliance with the intent and purpose of this code and shall, except in those instances in which a modification has been granted, not have the effect of waiving requirements specifically provided for in this code."

244. Plaintiff repeats and re-alleges each and every allegation as if fully set forth herein.

245. In violation of New York City Administrative Code Title 29, Chapter 2 2014 New York City Fire Code, Chapter 1 Administration Section FC 104.1, the City of New York and Defendant Policymaker Cassano has a policy, practice and/or custom through which its FDNY employees are irresponsibly and inadequately directed Defendants, including Meagher, Doe, Maryana Chouchereba, Kane, and Kavanagh by failing to adopt formal, clear, and official policies, procedures, rules and regulations on the following: 1) the 4th, 5th, 6th, and 14th Amendment standards of Defendant fire marshals of the Bureau of Fire Investigation on how to conduct a lawful interrogation in accordance with the *Miranda- Edwards-Minnick* line of cases under *Miranda v. Arizona*, 384 U.S. 436 (1966); Edwards v. Arizona, 451 U.S 477 (1981); & Minnick v. Mississippi, 498 U.S. 146 (1990); 2) the 4th, 5th, 6th, and 14th Amendment standards of Defendant fire marshals of the Bureau of Fire Investigation on how to obtain a voluntary confession in accordance with the *Miranda-Edwards-Minnick-Montejo* line of cases, citing Montejo v. Louisiana, 556 U.S. 778 (2009) where the Fifth Amendment's right to counsel attaches upon invocation (i.e., when an attorney is requested); 3) the 4th Amendment standards of Defendant fire marshals of the Bureau of Fire Investigation on how to conduct a lawful warrantless arrest, especially where the NYPD has such a formal written policy under NYPD Patrol Guide 208-01 (Effective Aug. 1, 2013)(Law of Arrest), which shows that the FDNY has no excuse; 4) 14th Amendment procedural due process standards of Defendant fire marshals of the Bureau of Fire Investigation on the prohibited conduct of intentionally making a false official statement, especially where the NYPD has such a formal written police policy under NYPD Patrol Guide 203-08 (Effective Aug. 1, 2013)(making false statements), which shows that the FDNY has no excuse; and 5) procedural due process standards of FDNY license revocation.

246. The City of New York and defendant policymaker FDNY Commissioner Salvatore Cassano is liable for its deliberate indifference to the consequences of this policy, practice and/or custom, and for failing to train, supervise, direct, discipline and/or retain those employees who engage in unconstitutional activity and engage in misconduct.

247. The City of New York and defendant policymaker FDNY Commissioner Salvatore Cassano is liable for the decisions of its final policymakers, including, but not limited to, defendant policymaker FDNY Commissioner Salvatore Cassano to create, promulgate and perpetuate this policy, practice and/or custom.

248. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

### NINTH CAUSE OF ACTION
8th Amendment Excessive Bail Violation Under
42 U.S.C. § 1983 Against Individual Defendants

249. Plaintiff repeats and re-alleges each and every allegation as if fully set forth herein.

250. Bail set at a figure higher than an amount reasonably calculated to fulfill its purpose of assuring the presence of the accused at trial is excessive under the Eighth Amendment Defendants, including Meagher, Doe, McDonald, Vance Jr., and Kavanagh.

251. Mr. Barbosa had no criminal history, no arrest history, and no history of ever failing to appear. Mr. Barbosa should have been released on personal recognizance or unsecured bail.

252. Mr. Barbosa spent approximately six consecutive days in custody directly following his unlawful arrest and excessive bail by Defendants, including Meagher, Doe, McDonald, and Kavanagh.

253. Bail was set as a result of the falsified information provided by Defendants Meagher & Kavanagh, Jane and John Doe, and City to the Court and Defendants Cyrus Roberts Vance Jr. and Brian McDonald.

254. Mr. Barbosa immediately was terminated from his position at the Yotel Hotel and AlliedBarton Security Services as a result of this false arrest and excessive bail, in violation of the 8th Amendment. Mr. Barbosa lost thousands of dollars of income from this sudden employment termination that was caused by the false arrest and excessive bail by Defendants Meagher & Kavanagh, Jane and John Doe, City, and Defendants Brian McDonald and Vance Jr.

255. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

### TENTH FIRST CAUSE OF ACTION
5th and 14th Amendment Substantive Due Process Violation of a Pre-trial Detainee for Six Days of Jail Punishment for Crimes that Plaintiff did not commit under
42 U.S.C. § 1983 Against Individual Defendants

256. Plaintiff repeats and re-alleges each and every allegation as if fully set forth herein.

257. Substantive due process protects pretrial detainees from conditions of confinement that amount to punishment.

258. To state a constitutional 5th and 14th Amendment substantive due process violation under Bell v. Wolfish, 441 U.S. 520 (1979), a detainee must establish that he was subjected to a disability or restrictive condition that punitively harmed him to amount to punishment of the detainee beyond merely interfering with his desire to be free from discomfort during confinement.

259. The proper inquiry is whether those conditions amount to punishment of the detainee. Absent a showing of an expressed intent to punish, if a particular condition or restriction is reasonably related to a legitimate nonpunitive governmental objective, it does not, without more, amount to "punishment," but, conversely, if a condition or restriction is arbitrary or purposeless, a court may permissibly infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees.

260. No secured bail was needed to ensure Mr. Barbosa's presence at trial. Mr. Barbosa

had no criminal history, no arrest history prior to September 20, 2013, and no history of ever failing to appear. Mr. Barbosa should have been released on personal recognizance or unsecured bail.

261. Secured bail was set by Defendants, including Meagher, Doe, McDonald, Vance Jr., and Kavanagh against Mr. Barbosa for the illegitimate punitive governmental objective of punishment and general punitive deterrence against committing fires and other crimes.

262. Mr. Barbosa spent approximately six consecutive days of punitive punishment in custody directly following his unlawful arrest and excessive bail by Defendants, including Meagher, Doe, McDonald, Vance Jr., and Kavanagh. The six day confinement of Mr. Barbosa was punitive and a punishment, which violates substantive due process.

263. Bail was set as a result of the falsified information provided by Defendants Meagher & Kavanagh, Jane and John Doe, and City to the Court and Defendants Cyrus Roberts Vance Jr. and Brian McDonald.

264. Arbitrary or purposeless conditions of confinement bearing no relation to a legitimate governmental goal amount to punishment.

265. "Presumption," in the context of the presumption of innocence, means that the burden of proving the charge is on the government. This guarantees that guilt cannot be declared until the charge has been proven by the government. The burden of proof is entirely on the government and there is no duty on the criminal defendant to assist the government in discharging its burden. This burden of proof applies to each and every element of crimes. In *In re Winship*, 397 U.S. 358 (1970), the U.S. Supreme Court made clear that the presumption of innocence is a constitutional principle which is binding on the states, saying that "the Due Process clause protects the accused against conviction except upon proof beyond reasonable doubt of every fact necessary to constitute

the crime charged." Id.

266. Confirmation bias may cause a fire marshal or prosecutor interviewer to discount facts of actual innocence.

267. The secured bail was excessive and a punishment because the secured bail violated Mr. Barbosa's presumption of innocence, and there were no aggravating circumstances such as arrest history, criminal history, or any failures to appear on Mr. Barbosa's life record to justify secured bail against Mr. Barbosa. Thus, the Defendants Meagher & Kavanagh, Jane and John Doe, and City to the Court and Defendants Cyrus Roberts Vance Jr. and Brian McDonald violated Mr. Barbosa's substantive due process rights as a pre-trial detainee by demanding that secured excessive bail be issued against Mr. Barbosa, which had the intended consequence of making Mr. Barbosa get hired from his job, be punished in jail for six days without due process and without any conviction of any wrongdoing, and lost wages.

268. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## CAUSE OF ACTION 11 and 12

Declaratory Relief under Title 28 USC § § 2201-2202

269. Plaintiff repeats and re-alleges each and every allegation as if fully set forth herein.

270. Title 28 USC § 2201 states, in part, that "In a case of actual controversy within its jurisdiction,… any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

271. Mr. Barbosa seeks a declaratory judgment that Defendants, including Meagher, McDonald, Cassano; James Leonard; James C. Hodgens; Andrew Dipadova; FDNY Chief Fire Marshal Robert G. Byrnes, Doe, and Kavanagh, and City, violated Plaintiff's rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the Constitution of the United States

and 42 U.C.S. §§ 1983 and 1985(3) specifically as follows:

272. Defendant FDNY Commissioner Salvatore Cassano; James Leonard; James C. Hodgens; Andrew Dipadova; FDNY Chief Fire Marshal Robert G. Byrnes, and the City of New York for failing to adequately train, supervise, direct, discipline, and control the Defendants and failing to maintain, implement, or establish official policies, guidelines, or procedures on the following: 1) the 4th, 5th, 6th, and 14th Amendment standards of Defendant fire marshals of the Bureau of Fire Investigation on how to conduct a lawful interrogation in accordance with the *Miranda- Edwards-Minnick* line of cases under *Miranda v. Arizona*, 384 U.S. 436 (1966); Edwards v. Arizona, 451 U.S 477 (1981); & Minnick v. Mississippi, 498 U.S. 146 (1990); 2) the 4th, 5th, 6th, and 14th Amendment standards of Defendant fire marshals of the Bureau of Fire Investigation on how to obtain a voluntary confession in accordance with the *Miranda-Edwards-Minnick-Montejo* line of cases, citing Montejo v. Louisiana, 556 U.S. 778 (2009) where the Fifth Amendment's right to counsel attaches upon invocation (i.e., when an attorney is requested); 3) the 4th Amendment standards of Defendant fire marshals of the Bureau of Fire Investigation on how to conduct a lawful warrantless arrest, especially where the NYPD has such a formal written policy under NYPD Patrol Guide 208-01 (Effective Aug. 1, 2013)(Law of Arrest), which shows that the FDNY has no excuse to not have a formal policy on warrantless arrests; 4) 14th Amendment procedural due process standards of Defendant fire marshals of the Bureau of Fire Investigation on the prohibited conduct of intentionally making a false official statement, especially where the NYPD has such a formal written police policy under NYPD Patrol Guide 203-08 (Effective Aug. 1, 2013)(making false statements), which shows that the FDNY has no excuse; and 5) the 4th, 5th, 6th, and 14th Amendment standards in regards to the NYDA's "exercise of independent discretion" in determining whether to criminally prosecute Plaintiff, which includes, but is not limited to, a) the 4th, 5th, 6th, and 14th Amendment standards of how the NYDA may conduct a lawful interrogation/a lawful custodial interrogation in accordance with the *Miranda- Edwards-Minnick* line of cases; b) the 4th, 5th, 6th, and 14th Amendment standards how the NYDA may obtain a voluntary confession in accordance with the *Miranda- Edwards-Minnick-Montejo* line of cases; c) the 14th Amendment equal protection standards on how to reduce behavioral and cognitive confirmation bias in regards to conducting the NYDA's "exercise of independent discretion" in determining whether to criminally prosecute Plaintiff.

<u>CAUSE OF ACTIONS 13 and 14</u>

<u>5th and 14th Amendment Procedural Due Process Deprivations of an FDNY License of the Plaintiff that was Revoked Without Notice or any Opportunity to be Heard under 42 U.S.C. § 1983 Against Individual Defendants</u>

273. <u>Plaintiff repeats and re-alleges each and every allegation as if fully set forth herein.</u>

274. <u>"The history of liberty has largely been the history of observance of procedural safeguards." ~ McNabb v. United States, 318 U.S. 332 (1943).</u>

275. <u>Due process is a flexible concept calling for "such procedural protections as the particular situation demands." Mathews v. Eldridge, 424 U.S. 319 (1976). It requires fundamental fairness, which involves consideration of the following three factors that have been set forth by the United States Supreme Court to assess whether the state had violated an individual's right to due process:</u>

276. <u>First, the private interest that will be affected by the official action;</u>

277. <u>Second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and</u>

278. <u>Third and finally, the Government's interest, including the function involved and administrative burdens that the additional or substitute procedural requirement would entail. Id.</u>

279. <u>    Accordingly, to "establish a procedural due process violation, the plaintiff must identify a protected liberty or property interest" and allege that the defendants deprived him of that interest without constitutionally adequate process. See González-Droz v. González-Colón, 660 F.3d 1, 13 (1st Cir. 2011); Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 56 (1st Cir. 2006); & Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982).</u>

280. <u> Plaintiff states two procedural due process claims: one count for insufficient notice, and one count for failure to provide the Plaintiff with an opportunity to be heard.</u>

281. <u>The Plaintiff had a protected liberty or property interest in Plaintiff's FNDY license,</u>

which City and Defendant Maryana Chouchereba, the FDNY/Public Certification officer, deprived the Plaintiff of that interest without constitutionally adequate process. Plaintiff received nothing in writing stating that Plaintiff's FDNY license had been revoked.

282. Plaintiff claims that City and Defendant Maryana Chouchereba never notified the court that presided over Plaintiff's criminal case.

283. Based on a lack of notice, Plaintiff was not informed of the need to request a stay of the revocation of the FDNY license during the pendency of Plaintiff's criminal prosecution.

284. Plaintiff had a well-established 13 year old private interest in Plaintiff's professional FDNY professional license that was be affected by the official action of sudden and arbitrary and capricious license revocation by City and Defendant Maryana Chouchereba.

285. Plaintiff's deprivation of procedural due process rights pertaining to Plaintiff's FDNY license had a substantial interference with the livelihood of the Defendant. Plaintiff lost Plaintiff's residence, lost wages, and lost Plaintiff's ability to earn income in Plaintiff's profession.

286. Plaintiff values the procedural due process violations pertaining to Plaintiff's FDNY license to be a civil rights violation valued at $80,000, where federal courts in the past have awarded $80,000 in other cases involving procedural due process violations of a Plaintiff's professional license.

287. Plaintiff claims that there was a substantial risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards such as notice and an opportunity to be heard and a stay on revoking the license during the pendency of the criminal prosecution.

288. The Government's interest, including the function involved and administrative burdens that the additional or substitute procedural requirement would entail were nominal to the

extent of the cost of one envelope, one postage stamp, and one printed piece of paper notifying the Plaintiff of the City's intent to revoke Plaintiff's license.

289. Plaintiff sat and waited at the office of Defendant Maryana Chouchereba wondering what was going on and not being informed how the Plaintiff was supposed to renew Plaintiff's professional license to allow the Plaintiff to have a marketable license to earn income.

290. Defendant Maryana Chouchereba was not properly trained or directed in a written policy on how to comply with the procedural due process rights of the Plaintiff, which caused erroneous deprivations of licensing rights, and the City's deficient policymakers should be held accountable.

291. This illegal licensing revocation was maliciously designed to financially castrate the Plaintiff to substantially interfere with Plaintiff's livelihood to interfere with Plaintiff's financial capacity to afford the costs of zealous criminal defense counsel and private investigators.

292. Plaintiff's deprivation of any opportunity to be heard only substantiates the blind and unfair prejudice that Defendants held against Plaintiff.

293. Even when personally confronted by Plaintiff waiting at Defendant's office for over an hour, Defendant Maryana Chouchereba continued to fail to notify the Plaintiff in writing or provide the Plaintiff with an administrative licensing hearing.

294. Defendant Maryana Chouchereba needs to be deposed in a discovery proceeding to ascertain who in the FDNY Legal Department was ill-advising Defendant Maryana Chouchereba to engage in financial castration against the Plaintiff. The FDNY Legal Department is not blameless in this case; Plaintiff, prior discovery proceedings, simply doesn't know who behind the scenes in the FDNY Legal Department maliciously condoned the blatantly illegal and unconstitutional conduct of the named Defendants. Plaintiff suspects that the majority of named

Defendants detrimentally rely on legal advice of the FDNY Legal Department.

295. This case not only involves an onslaught attack on the Plaintiff's freedom, dignity, and professional reputation. There was also a malicious, personal, financial attack on the Plaintiff through Plaintiff's professional license, which Plaintiff prays the federal court will allow to be redressed.

Relief Sought

**WHEREFORE**, Plaintiff respectfully demands judgment against the Defendants, jointly and severally, in both their official and individual capacities in accordance with FRCiv.P. Rule 8(a)(3) as follows:

a)  A declaratory judgment that Defendants, including Meagher, McDonald, Cassano; James Leonard; James C. Hodgens; Andrew Dipadova; FDNY Chief Fire Marshal Robert G. Byrnes, Doe, Vance Jr., Kavanagh, and City, violated Plaintiff's rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the Constitution of the United States and 42 U.C.S. §§ 1983 and 1985(3), including, but not limited to, false arrest, malicious prosecution, excessive bail; secured bail as punishment, FDNY license revocation without notice or an opportunity to be heard in violation of procedural due process, and failing to train, intervene, discipline, supervise, and direct fire marshals and assistant district attorneys on conducting lawful interrogations and obtaining voluntary confessions;

b)  In favor of Plaintiff in an amount to be determined by a jury for each of Plaintiff's causes of action;

c)  Awarding Plaintiff punitive damages in an amount to be determined by a jury;

d)  Awarding Plaintiff compensatory damages in an amount to be determined by a jury, including, but not limited to, pain and suffering and lost wages from being wrongfully terminated from Plaintiff's position at the Yotel Hotel and AlliedBarton Security Services as a result of this false arrest, $80,000 illegal license revocation, and other unconstitutional conduct; $5,000 in unreturned bail money, $1,519 in private investigator expenses, $15,000 in Ryan Clark criminal defense retainer, $1,700.20 in expenses for court transcripts, damages for

revocation of FDNY license, constitutional damages for damage to professional reputation both past and future, and compensatory damages for suffering "great humiliation, embarrassment, and mental suffering," which has been a form of compensatory damages awarded by federal courts in the past like for Webster Bivens in the 1970s for example, citing Bivens v. Six Unknown Names Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971).

e)   Pre-judgment interest;

f)   Awarding Plaintiff reasonable attorneys' fees and costs pursuant to Title 42 U.S.C. § 1988; and

g)   Granting such other and further relief as this Court deems just and proper.


## JURY DEMAND

Pursuant to F.R.Civ.P. Rule 38, Plaintiff demands a trial by jury, in free exercise and enjoyment of the Plaintiff's right secured by the Seventh Amendment that is the supreme law of the land under the Supremacy Clause of Article 6 clause 2 of the United States Constitution.

Dated: 12-28-17
Bronx, New York

Respectfully submitted,

*Jaime Santana Jr., Esq.*
Santana Law Firm, PC
Bar Number:  4001285
Attorney for Mr. Barbosa
778 Castle Hill Avenue
Bronx, NY  10473
718 792-2000